[Crim. No. 7050. In Bank. July 31, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN LAW-
RENCE WELCH, Defendant and Appellant.

Charles E. Ward, Public Defender, for Defendant and Appellant.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Plaintiff and Respondent.

GIBSON, C. J.—Defendant pled guilty to robbery and to the murder of Rosalie Hettrick and Salvatore Testa, and stipulated personally and through his attorney that each of the offenses of murder was murder in the first degree. A jury trial on the issue of penalty was waived by defendant and his attorney, and after hearing evidence the court sentenced defendant to prison for the term prescribed by law on the robbery charge and imposed the death penalty on the murder charges. This appeal is automatic. (Pen. Code, § 1239, subd. (b).)

During the summer of 1961 defendant worked at odd jobs in the Apple Valley area in San Bernardino County and in August was temporarily employed as a handyman at the Black Horse Motel. While so employed he was living at the home of a woman for whom he had formerly worked, and on the morning of August 9 (the day of the murder) he borrowed a truck from her to drive to the motel. Sometime during the morning he purchased four quarts of beer, which he put into an icebox in an empty room. He gave two of the bottles to an employee of the motel and drank about a quart and a half himself. He then searched the owner's apartment for money with which to buy more beer. He stole approximately three dollars and purchased a six-can pack of beer. During the remainder of the morning and the early part of the afternoon he continued drinking beer. Later in the afternoon he returned to the owner's apartment and stole a .22-caliber pistol which he said he intended to sell. From the motel he went to the Wild Stallion Café which was located nearby.

Three persons were in the café when he entered: Rosalie Hettrick, Salvatore Testa, and an unknown elderly man. Testa was seated at the counter eating a sandwich, and Mrs. Hettrick, the barmaid, was seated in back of the counter talking to Testa. Defendant ordered a glass of beer, and after drinking about half of it he went to the men's restroom. When

he came out, the older man had left the café. Defendant testified that he then decided to "rob the place" in order to finance a trip to Detroit, where he formerly lived. (He told police officers that he made this decision when he entered the café.) He drew the gun from his belt and pointed it at the two victims, telling them, "This is a stick-up. Don't move and you won't be hurt." Defendant then removed the money from the cash register and ordered Testa to give him his money. Testa pushed some money along the counter, saying, "This is all I've got." Testa appeared to be rising from his stool, and defendant, thinking that Testa was moving toward him, pointed the gun at Testa and fired. As Mrs. Hettrick started to move he shot her. He went back to the Black Horse Motel where he had parked the borrowed truck and drove out State Highway 18 toward Barstow. He had driven several miles when he began to have trouble with the motor of the truck, and eventually the motor stopped. He abandoned the truck and hitchhiked to Las Vegas, where he was arrested a short time later.

Defendant was discharged from military service after a court-martial for being absent without leave for four months. He was convicted in 1953 of the crime of "unlawfully driving away an automobile," for which he served a term in the Michigan state prison. In 1954 he was convicted in New Mexico of the crime of "breaking and entering" and sentenced to the state prison. He returned to Michigan, where he was again imprisoned for his prior offense in that state. In 1959 he was convicted in Michigan of the crime of "attempting to unlawfully drive away an automobile." He was released from prison in 1960 and came to California. At the time of the trial he was 33 years old.

Relying on *People* v. *Love*, 56 Cal.2d 720 [16 Cal.Rptr. 777, 17 Cal.Rptr. 481, 366 P.2d 33, 809] (decided after judgment was pronounced in the present case), defendant contends that the prosecutor committed prejudicial misconduct in arguing the deterrent effect of the death penalty. We held in *People* v. *Love* that it was prejudicial error for the prosecutor in a murder case to assert that the death penalty is a *more effective* deterrent than life imprisonment when there was no evidence to that effect in the record and to bolster that assertion with statements of fact of which there was likewise no evidence in the record. We also pointed out that the wisdom and deterrent effect of the death penalty are for the Legislature to deter-

mine, that they are therefore not justiciable issues, and that evidence thereon is inadmissible.

 In the present case the prosecutor stated in his argument to the trial court that there are some people who are so concerned with their own rights and desires and so little concerned with the welfare of others that the only solution is to remove them from society and that there is no means of permanently removing them from society except the death penalty. He pointed out that, if the threat of the death penalty were removed, a person such as defendant would face only a seven years to life sentence for murder as compared with a five years to life sentence for robbery, stating that this was a small difference in view of the better possibility of escaping detection if the victims were killed. The prosecutor also stated, after reviewing defendant's criminal record, that the death penalty should be imposed because of the trend shown in defendant's life and because of the necessity of telling people who have "inclinations" similar to those of defendant that such conduct will not be tolerated and will result in their removal from society. The prosecutor said, however, that "the prospect of the death penalty didn't deter [Welch]. It will undoubtedly not deter others. There will be more murders. We don't know how many it does deter."

The argument of the prosecutor was directed primarily to the facts and circumstances of the crimes involved, the nature of the offenses, and the mental state of defendant. The references to the deterrent effect of the death penalty comprised a minor part of the argument, and the statements were temperate and restrained. Moreover, in appraising the effect of the argument, consideration should be given to the fact that it was made to the court sitting without a jury. (See *People* v. *Robillard*, 55 Cal.2d 88, 99 [10 Cal.Rptr. 16, 358 P.2d 295].) We are satisfied that defendant was not prejudiced by the argument. (Cf. *People* v. *Pike, ante,* pp. 70, 94-96 [22 Cal. Rptr. 664, 372 P.2d 656]; *People* v. *Imbler,* 57 Cal.2d 711, 717 [21 Cal.Rptr. 568, 371 P.2d 304]; *People* v. *Lane,* 56 Cal. 2d 773, 787 [16 Cal.Rptr. 801, 366 P.2d 57].)

 There is no basis in the record for the assertion that the court did not exercise any discretion in determining the penalty but instead erroneously concluded it had no alternative but to impose a sentence of death. Reference is made to a statement of the judge in summarizing the case after argument of the attorneys in which he said that defendant admitted shooting "these two innocent and defenseless people,"

and that "to me that indicates an abandoned heart on the part of this defendant." It is apparent, however, that this language, particularly when considered together with other statements of the judge, was intended to express the determination which he made upon the exercise of his discretion rather than a conclusion that as a matter of law he had no alternative.

Finally it is argued that the imposition of the death penalty is not justified by the facts and that this court should reduce the punishment to life imprisonment. We have held repeatedly that the trier of fact has sole responsibility to select the penalty for first degree murder and that this court cannot substitute its judgment as to the choice of punishment. (*People* v. *Rittger*, 54 Cal.2d 720, 734 [7 Cal.Rptr. 645, 355 P.2d 645].)

The judgment is affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.