[Crim. No. 3336. First Dist., Div. One. Oct. 4, 1957.]

THE PEOPLE, Respondent, v. PAUL ROBERT BENJAMIN, Appellant.

Arthur D. Klang for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and William M. Bennett, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Convicted of a violation of section 11500 of the Health and Safety Code, possession of heroin, defendant has appealed from the judgment and from the order denying a new trial, also from the order refusing to dismiss the allegation of a prior conviction and an order sentencing him to the state prison for life.*

Two San Francisco police officers and two federal narcotics enforcement officers had a certain house under observation. One of them was in the house. The others were outside. At about 5:05 p. m. defendant and his wife drove up in a car and parked. She got out and went into the house. Defendant looked in the direction of the officers, got out of the car and started walking east along the street. The three officers ran toward him. He made a throwing motion with his right hand. A small white object left his hand. It was retrieved by one of the officers. It was a bindle containing 52 grains of heroin.

Defendant testified that he was sitting quietly in the car. One of the officers saw him in the car, "hollered like an Indian" and ran toward the car. The officers opened the car door, dragged defendant out, put him against the building, handcuffed him, hit him twice in his stomach and in the right eye. He denied throwing the package and said he never saw it until in court.

(1) *Defendant claims the arrest was illegal,* contending that the officers came over toward him for the purpose of arresting him but without reasonable cause to believe a crime had been committed or that he had committed it (Pen. Code, § 836) and without complying with the provisions of section 841. But he made no objection to introduction of the evidence obtained as an incident of the arrest. Three officers testified without objection that defendant made a throwing motion: Two of them, that a white object left his hand and was retrieved. A chemist testified without objection that this white object contained heroin, and the object itself was introduced into evidence without objection. It is too late now to make

---

*The last two orders are nonappealable but are reviewable upon the appeal from the judgment.

the objection. The arrest and search occurred on February 24, 1955, prior to the Cahan decision, but the trial occurred in September, 1956, after the Cahan decision.

If he had made timely objection it is quite possible the prosecution could and would have made an ample showing that the officers had reasonable cause for making the arrest without a warrant and the seizure as an incident of the arrest. Moreover, at the trial,· defendant took the position that evidence concerning information the officers had before they made the arrest was irrelevant, incompetent and immaterial. The record indicates he was instrumental in curtailing inquiry concerning whether the officers had reasonable cause for believing defendant committed a felony. He should not be heard now to claim the evidence on that point was insufficient. (See *People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535].) Nor do we perceive a violation of section 841 in the circumstances under which the arrest was made. (See *People* v. *Beard,* 46 Cal.2d 278, 281 [294 P.2d 29] ; *People* v. *Jaurequi,* 142 Cal.App.2d 555, 562-563 [298 P.2d 896].)

(2) *Did the court err when ruling upon the admissibility of evidence?*

Defendant complains of several rulings in respect to the admission or exclusion of evidence.

(a) During the cross-examination of Officer McKinley, counsel asked if an arrest had been made at this place the day before. Objection was sustained. Counsel stated that it was material "as to the motive." The officer's "motives" in making the arrest could not have been remotely relevant to the trial. Moreover, the information was later elicited by defense counsel without objection.

(b) The defendant objects to the rulings made during a colloquy concerning the information upon which the officer based his arrest: "Q. [By defense counsel] In other words, you walked over to place him under arrest before he had ever done anything, is that your testimony? A. We had information that the defendant—— Q. (Interrupting) Now, just a moment. Your Honor, what the witness is about to say about what information he had is certainly irrelevant, immaterial and incompetent. MR. BERMAN: It might not be. MR. KLANG: No— he might say that he had some reason, but he can't go ahead and tell us what information he had, because that would be something that this defendant couldn't possibly defend against. THE COURT: No. But the question is if he so went to arrest him. He may give his answer, yes

or no. MR. KLANG: Yes. THE COURT: And then give an explanation, if he wishes. THE WITNESS: My answer is 'Yes.' I went over to place the defendant under arrest.''

The result was that the witness gave just the answer defense counsel wanted, "yes," without an explanation.

(c) The defendant complains that the prosecution was allowed to examine the witness concerning matters which the defendant was precluded from going into. ▮ The colloquy, without the rulings, is as follows, and appears to be substantially the same matter that defendant elicited from the same witness: "Q. You had been out in front of 12 Montezuma Street, in that vicinity, 12 Montezuma Street, for a number of hours prior to 5:00 o'clock? A. Yes, sir. Q. And for what purpose? [Objection and ruling.] . . . A. For the purpose of placing the defendant under arrest.''

▮ (d) Defense counsel asked a series of questions of Officer Getchell seeking "to elicit from him that the reason for this arrest and State booking was that it would not be a proper Federal booking.'' Objections to these questions were properly sustained. These questions were obviously improper, apparently designed to suggest to the jury that the arrest in this case was illegal although defense counsel carefully refrained from litigating the legality of the arrest. They would only invite speculation and surmise by the jury on issues that were immaterial.

(e) Defense counsel asked Officer Getchell on cross-examination, "Now, isn't it a fact that Captain Engler told you that I had made a complaint against you, that I didn't want you prosecuted, but I did want you reprimanded; did he tell you that?'' Objection was properly sustained, and counsel explained that he was offering to impeach the witness. In his brief, counsel talks of impeachment by the making of contradictory statements. The fact that defense counsel made a complaint about the officer would not be a contradictory statement by the officer. Defense counsel asked the witness whether he had made a contradictory statement to Captain Engler, and he denied making such a statement.

▮ (f) Defendant testified that a lady and some children were in the street at the time he claimed he was beaten by the police officers. He was then asked, "You had made every effort, and hired a detective, to find those people?'' Objection was sustained to that question, and to the question, "Have you made an effort to find that lady?'' The state argues that the whole subject of the beating was irrelevant. The

testimony concerning the beating came in without objection. Apparently the theory of the defense was that the defendant was an innocent bystander, who was arrested without provocation, beaten up and framed by the police. The beating would seem relevant to show the entire circumstance surrounding the defendant's encounter with the police. The questioning would be proper to negate the adverse inference that might arise from the nonproduction of the witnesses to the incident. The questions would tend to show that it was not within the defendant's power to produce the witnesses and were proper. (See *Mattocks* v. *Class A Motor Co.*, 92 Cal. App. 127, 131 [267 P. 786].) But we do not regard this as prejudicial error, particularly in view of defendant's failure to object to the introduction of the evidence seized by the police.

(g) Defendant was asked by his counsel, "And had you been handling narcotics?" He answered, "No." Upon cross-examination the prosecutor began to ask about a prior conviction. He stated it was for the purpose of impeaching the witness' statement that he had not handled narcotics. Defense counsel told the court the question on direct examination was limited to the time of the arrest, around February 24, 1955. The court reserved its ruling until the reporter might read that particular question. A question concerning the defendant's 1952 conviction for "handling marijuana" was allowed and answered. Whether the question upon direct was as broad and sweeping as the prosecution took it to be is not free from doubt. However, the trial judge's interpretation was not unreasonable. We are bound by it. The challenged question was, therefore, within the scope of cross-examination.

(3) *Did the prosecuting attorney commit prejudicial misconduct?*

Defendant complains of a number of incidents.

(a) Officer McKinley testified that the defendant's car was parked on the wrong side of the street and from his description of the car near which the bindle was found, it is apparent that the latter car was on the right side of the street. On cross-examination, defense counsel first asked whether the defendant's car was facing in the wrong direction. He then read the officer's testimony at a previous hearing referring to a car parked on the proper side of the street, apparently for impeachment purposes. The officer stated that he had given such testimony, "but the reference was made to

the car that was parked where the bindle was found, not the car of the defendant.'' Mr. Berman, the prosecuting attorney, then said, ''Why didn't you read the entire transcript, counsel? Why did you take something out of——'' Mr. Klang asked for an instruction to disregard Mr. Berman's remark. Mr. Berman asked that the preceding matter in the testimony be read. Mr. Klang stated, ''I would ask counsel to try his own case, and let me try mine.'' Mr. Berman said, ''Counsel deliberately takes something out of context.'' The court cautioned the jury ''that statements made by counsel are not evidence, and are not to be considered as evidence.'' The portion of the previous testimony indicating that the witness was talking about the car near the place the bindle was found and not defendant's car, was then read.

Mr. Berman's remarks were not really necessary, since the witness had already pointed out that Mr. Klang was taking the testimony out of context. However, Mr. Berman was, in the circumstances, entitled to request that the entire transcript be read putting the testimony in context. His statements may be interpreted as such a request, and a showing of the necessity for reading the omitted portions.

■ (b) The prosecutor asked one of the officers, ''You knew that, on the 24th of February, while you were waiting for this defendant, at that time you knew this defendant was about to make a delivery of narcotics?'' An objection was sustained to this question. Inasmuch as the question was not answered, and the jury were continually admonished that statements of counsel were not evidence, we do not see how this question could have been prejudicial. Moreover, the defendant's counsel, during questioning of the same witness, had invited the question by implying that the officer arrested the defendant without any provocation or reason (''In other words, you walked over to place him under arrest before he had ever done anything, is that your testimony?'').

■ (c) Defendant's next contention relates to the attempted impeachment of Officer Getchell by asking the witness whether defense counsel had complained about Officer Getchell's alleged beating of defendant's wife. Mr. Berman made a general objection and said, ''I will make the statement that I have no objection if counsel wishes to call Captain Engler.'' Defense counsel stated that he could not get Captain Engler ''at this late date.'' Mr. Berman then remarked, ''Engler is available every day of the week.'' Defense counsel did not

cite Berman for misconduct nor did he ask for an instruction that the remark be disregarded.

Defendant contends that this last remark of Mr. Berman "put appellant in the position of trying to conceal or suppress witnesses." This is not so. It perhaps gives the impression that the witness was not unavailable, as defense counsel suggested, but there is nothing in the record to indicate that the police captain was not available and that the impression created by the prosecution was false.

(d) Defendant complains that questioning him about his prior conviction was misconduct. This we have already considered. (See paragraph (2) (g), above.)

(e) The prosecuting attorney, in his opening argument, stated at least twice that the police knew that the defendant was going to make a delivery of narcotics on February 24, 1955, at the house they had under observation. Testimony to this effect had been elicited by defense counsel during the cross-examination of Agent Prziborowski.

The prosecuting attorney was asking the jury to draw an unwarranted inference from the testimony, that defendant knew what narcotics were. The prosecution was asking the jury to use this testimony on the issue of the defendant's guilt. However, the defense counsel did not ask for an instruction that the jury disregard this argument. An instruction by the court would have cured this error and the defendant cannot complain about it now.

(f) The prosecutor asked the jury to infer, from the fact that an arrest had been made on the premises the previous day, that the police had interrogated the persons arrested and learned that the defendant was supplying those persons with narcotics. Defense counsel objected to this and asked for an instruction to the jury to disregard it. The court so instructed. The defendant contends that the harm done was irreparable but we do not so regard it.

(g) The prosecutor argued: "But [the defendant] knew what narcotics are from before. He lied to you on the stand here——" Defense counsel objected, "There is no evidence that this man lied, or anybody else lied." The court observed that that was for the jury to determine. The real objection to the argument was that the prosecutor was asking the jury to infer from the fact that the defendant had been convicted of possession of marijuana that he knew what heroin was. The defendant did not testify that he did not know what narcotics were, but that he had never seen heroin before.

However, the defense counsel did not bring this to the court's attention, and did not ask for an instruction to the effect that the inference was not proper since it assumed that all narcotics were the same. He should not be heard now to complain.

 (h) The prosecutor argued, "But the only way to have you acquit this defendant is to believe, ladies and gentlemen of the jury, that the police department and the federal government got together, got hold of 52 grains of heroin, and said, 'Let's plant it on Mr. Benjamin.'" The defendant argues that the effect of the suggestion that the appellant accused the "Federal Government of conspiring with the Police Department to frame" him "was deadly." It was perhaps a rather bald statement of the theory of the defense, but it does appear to have been defendant's theory. The heroin did not materialize out of nowhere. Either the federal and police officers were cooperating in framing the defendant or the police officers were framing him and the federal officer was perjuring himself, seems to have been defendant's theory of the case. Also, defendant assigned the quoted argument as misconduct and the court reminded the jury to take the evidence "from the lips of the witnesses and the exhibits. This is argument of counsel."

 (i) The prosecutor said, "Now, we have a choice, you can either believe the officers or believe the defendant. If you believe the officers, you must find the defendant guilty. If you believe the defendant, you must acquit him." Defense counsel objected that that was a misstatement of the law, and that the court would instruct that the jury must acquit if they have a reasonable doubt. The court instructed that the jury must take the law only from the judge.

While there was some error, as indicated herein, we do not consider that any of it was prejudicial.

 (4) *Did the court err in refusing to dismiss the charge of a prior conviction, after trial and before judgment? No.*

It lies within the sound discretion of the trial court to dismiss such a charge or not, after conviction and prior to pronouncing sentence. (Pen. Code, § 1385; *People* v. *Burke,* 47 Cal.2d 45, 51 [301 P.2d 241]; *People* v. *Harris,* 146 Cal. App.2d 142, 147 [304 P.2d 178].)

In this case, defendant says the court refused to exercise its discretion; that it denied the application because the district attorney opposed it, in effect refusing to exercise its discretion.

We do not so interpret the court's action. Defense counsel stated (upon motion in the trial court to augment the record as to what happened in this regard): "Mr. Berman objected to dismissal of the priors, and your Honor made the statement that in view of that objection you felt you could not dismiss the priors, and you denied it." The court did not agree: "As I recall, my statement of the Burke case is that the Court did not pass upon the situation where there was an objection on the part of the District Attorney. . . . Not that I didn't have the power. I have consistently refused to make that statement, and have not passed upon it." A reasonable interpretation of this statement is that the court remarked that the Burke case did not pass on the exact situation presented to this court, but that the court did not rest its denial on that ground, and did in fact exercise its discretion when denying the motion to dismiss. The fair inference is that considering all relevant factors the trial court deemed this not a case for amelioration of the sentence by dismissal of the charge of a prior conviction.

The judgment and the order denying a new trial are affirmed. The other appeals, taken from nonappealable orders, are dismissed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied November 1, 1957.