[Crim. No. 6999. In Bank. May 17, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. PAUL KERN IMBLER, Defendant and Appellant.

Gregory S. Stout, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James and Gilbert F. Nelson, Assistant Attorneys General, for Plaintiff and Respondent.

TRAYNOR, J.—Defendant was convicted of first degree murder and of assault with a deadly weapon with intent to commit murder. The jury fixed the penalty at death, and the trial court denied defendant's motion for a new trial. This appeal is automatic. (Pen. Code, § 1239, subd. (b).)

On the evening of January 4, 1961, two men entered a Los Angeles grocery store owned by Morris Hassen. They walked to the check stand where Mr. Hassen was leaning down dusting liquor bottles. Mrs. Hassen, who was standing nearby, testified that she moved to the check stand to wait on the men, that as she did so she noticed her husband getting up from behind the stand and that "by the look of his face" she could see that something was wrong. When she bent down to ask what the trouble was, she saw a gun protruding from the coat of the man subsequently identified by other witnesses as defendant. A moment later the gun discharged, fatally wounding Mr. Hassen. The men turned, walked from the store, and departed in different directions.

At the trial defendant denied participating in the crime. His defense consisted primarily of an alibi and impeachment of the identification witnesses. The evidence, however, was more than sufficient to establish that he did the shooting. Although Mrs. Hassen was unable to see his face because his hat was tilted, she was able to identify the hat and coat he was wearing. She identified the second man from police photographs as Leonard Lingo, who was killed 10 days after the shooting when he accompanied defendant on an armed robbery in Pomona.

Alfred Costello, an identification witness, was walking on the opposite side of the street when his attention was attracted to the store by two men standing at the cash register. When he heard a shot he crossed the street to investigate, and in a lighted area in front of the store and at a distance between 8 and 12 feet, he viewed defendant who was still wearing the hat and coat and still carrying a gun. According to Costello, defendant turned into an alley, dropped his hat, and began to run. Costello gave chase. Defendant paused in the alley under a light as if "trying to make up his mind whether to go right or left," and Costello was able to see him without the hat at a distance between 15 and 20 feet. Defendant then fired a shot that hit a wall behind Costello, discarded his coat, and fled through a parking lot. Costello retrieved the coat and discovered a gun in it identified by a ballistics expert as the murder weapon. Costello positively identified defendant as the man he had pursued.

Alonzo Dunlap, an attendant at the parking lot through which defendant escaped, testified that he got a side and front view of defendant as he walked through the illuminated lot. Although Dunlap did not hear any shots, his testimony otherwise corroborated Costello's testimony.

Billy Hillen, a third witness, was leaving the market when defendant and Lingo entered. He testified that he got a good look at both men, and he identified defendant's hat and coat. When Hillen had walked only a few steps from the store, he heard a shot and turned around. He again looked closely at the two men as they left the store, and observed defendant holding a gun. Hillen had no difficulty in picking defendant out of a lineup at police headquarters, and he also identified defendant at the trial.

Defendant testified that he spent the evening of the shooting in various bars with Jerry Mayes, Robert Mahon, and two men whose names he could not recall, and that he was also accompanied by a girl named Ann at the bar where he claimed to be at the time of the killing. Only Mayes could be located to testify in defendant's behalf, although an investigator attached to the public defender's office attempted to trace the others. Mayes, who was in custody for accompanying defendant and Lingo on the Pomona robbery, corroborated defendant's testimony on all but minor points. On cross-examination, however, he admitted that "It's hard to be certain" that the evening he recalled was the night of the murder. Dewitt Lightner, a police officer, testified that he

had asked defendant if he had any alibi that could be checked out, and that defendant replied in effect that he could not account for his time, but that he was probably drinking at the Four Aces Bar, and that he also said there was no one with him who could account for his time.

Defendant contends that even if the evidence was sufficient to sustain a finding that he was the killer, it did not demonstrate that a robbery was being perpetrated that would make the killing murder in the first degree. (Pen. Code, § 189; *People* v. *Coefield,* 37 Cal.2d 865, 868 [236 P.2d 570].) The only instructions given to the jury on degrees of murder were: "Murder is classified into two degrees, that of murder in the first degree and that of murder in the second degree" and "All murder which is committed in the perpetration or attempt to perpetrate robbery is murder of the first degree." The court also defined robbery and attempt. Admittedly, there was no evidence that defendant or Lingo demanded money of the deceased or that they took money after the killing. Indeed, since defendant asserted throughout the trial that he was not the killer, there was no explanation why the gun discharged. The evidence establishes, however, that defendant and his confederate entered the store of a total stranger with a loaded gun at the ready; they walked to the cash register and shot the proprietor when he emerged from under the counter. These were overt acts toward committing a robbery that clearly justify an inference that there was a specific intent to commit that crime. Such intent may be established by the circumstances surrounding a defendant's actions. (*People* v. *Jennings,* 158 Cal.App.2d 159, 165-166 [322 P.2d 19]; see *People* v. *Hubler,* 102 Cal.App.2d 689, 695 [228 P.2d 37]; *State* v. *Burnett,* 37 Wn.2d 619 [225 P.2d 416, 417-418].) The inference that defendant intended to commit robbery is also supported by his subsequent participation with Lingo in the robbery in Pomona, evidence of which was admitted without objection and indeed elicited in part by the defense. (See *People* v. *Coefield, supra,* at pp. 869-870; *People* v. *Peete,* 28 Cal.2d 306, 315-316 [169 P.2d 924]; 7 U.C.L.A. L.Rev. 463.) There was no evidence offered tending to show that defendant entered the store for any purpose other than robbery, and it is difficult to conceive of any other purpose. The trial court, therefore, did not err in failing to instruct on second degree murder. (*People* v. *Green,* 13 Cal.2d 37, 44 [87 P.2d 821]; *People* v. *Lloyd,* 98 Cal.App.2d 305, 311 [220 P.2d 10]; *People* v. *Sameniego,*

118 Cal.App. 165, 170-171 [4 P.2d 809, 5 P.2d 653]; see *People* v. *Moran*, 18 Cal.App. 209 [122 P. 969].)

Defendant contends that the trial court committed prejudicial error in admitting hearsay evidence. Before defendant was taken into custody a police artist made a drawing of the killer as described by the witness Costello. The picture was modified later, following suggestions of Costello and other witnesses. At trial, Costello was shown the picture, and he identified it. The picture was first admitted into evidence without objection, but defendant's counsel was later allowed to interpose the objections of lack of foundation and immateriality. The picture was again admitted. Although the picture was a representation of extrajudicial declarations of the witness regarding the killer's physical characteristics, Costello, the police artist, and other identification witnesses all testified and were cross-examined on the matter. (See *People* v. *Gould*, 54 Cal.2d 621, 626 [354 P.2d 865]; Morgan, Hearsay Dangers, 62 Harv.L.Rev. 177, 192-193.) ██ "[A]n extrajudicial identification is admissible, not only to corroborate an identification made at the trial [citation], but as independent evidence of identity." (*People* v. *Gould, supra.*) ██ Similarly this pictorial embodiment of a physical description is admissible for that purpose. The defense attempted to show that Costello identified defendant at a police lineup only after he had heard the other witnesses do so. The implication that he could not make a certain identification could be offset by showing that he had previously described defendant with sufficient accuracy that an artist could construct a reasonable likeness of defendant after other witnesses made minor corrections.

██ Defendant asserts that his counsel was unduly restricted in his *voir dire* examination of a prospective juror regarding the juror's views on capital punishment. Counsel has the right to inquire into the juror's opinions on the subject (*People* v. *Hughes, ante,* pp. 89, 96 [17 Cal.Rptr. 617, 367 P.2d 33]), but the record reveals that this right was not infringed. Defendant's counsel asked the juror whether he knew that an organization to which the juror belonged advocated retaining the death penalty. The juror answered that he did not, and at this point an objection was sustained as to the form of the question only. Counsel was then allowed to question the juror on his personal beliefs as opposed to those of the organization. Apparently counsel

was satisfied with the answers, for he passed the juror for cause.

There is no merit in defendant's contention that he was prejudiced by restrictions on his counsel's attempt to impeach the witness Costello on the ground he lacked mental capacity. The trial court allowed counsel the greatest latitude in his cross-examination. He was allowed to question Costello about commitment to mental institutions despite the fact that the most recent commitment was more than 10 years before the trial. Counsel also asked a number of questions regarding recent treatment for mental disorder, and the answers were negative.

Equally without merit is defendant's contention that he was not allowed to show that at the police lineup the witnesses were uncertain in identifying him and that they discussed among themselves whether he was the right man. The record reveals that the defense was allowed to explore the matter as thoroughly as desired and that the answers elicited were damaging to the defense. The objections sustained by the court were primarily to the form of questions asked. There is nothing in the record to indicate that counsel was unduly hampered in his cross-examination.

Defendant contends that the prosecutor's objections were so numerous that defense counsel was unable properly to conduct his case. Twice during the trial counsel objected to the court that he was being unduly harassed. The record, however, discloses no such harassment and indicates that the defense was permitted to present any relevant evidence it had.

Defendant contends that his conviction must be reversed because he was taken into custody on January 14, 1961, but was not informed of the charges against him until the following February 14. Defendant was legally in custody during this time because he had pleaded guilty to the robbery in Pomona. Although he should have been taken before the magistrate on the murder charge within the time limit prescribed in Penal Code section 825, the failure to do so is not a ground for reversing the conviction. (*Rogers* v. *Superior Court*, 46 Cal.2d 3, 9-10 [291 P.2d 929].)

Finally, defendant contends that under *People* v. *Love*, 56 Cal.2d 720, 731-732 [17 Cal.Rptr. 481, 366 P.2d 33, 809], he is entitled to a new trial on the penalty imposed because of the prosecutor's argument to the jury as to the deterrent effect of the death penalty. The prosecutor's discus-

sion in that regard, offered to the jury as ''another factor you can consider,'' was temperate and restrained and was only a brief and minor part of his argument. The error was therefore not prejudicial. (*People* v. *Garner, ante*, pp. 135, 156 [18 Cal.Rptr. 40, 367 P.2d 680].)

The judgment and order denying defendant's motion for a new trial are affirmed.

Gibson, C. J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

Schauer, J., concurred in the judgment.