[S. F. No. 22592.   In Bank.   Oct. 31, 1968.]

THE PEOPLE, Petitioner, v. THE SUPERIOR COURT OF MARIN COUNTY, Respondent; LOVERD HOWARD, Real Party in Interest.

492

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Edward P. O'Brien and Derald E. Granberg, Deputy Attorneys General, and Bruce B. Bales, District Attorney, for Petitioner.

No appearance for Respondent.

Jerome C. Durham, Public Defender, and Harold J. Truett, Deputy Public Defender, for Real Party in Interest.

PETERS, J.—The People petition for a writ of mandate to compel respondent superior court to vacate an order dismissing an information in the interests of justice. (Pen. Code, § 1385.) It is our opinion that mandate is not available for this purpose, and for this reason the petition must be denied.

The facts are as follows: The trial judge dismissed the information on his own motion after the jury had returned a verdict finding defendant, Loverd Howard, guilty of two counts of robbery in the first degree. A transcript of the preliminary hearing has been furnished by the Attorney General but we have not been furnished a transcript of the trial. The trial judge filed a 24-page memorandum opinion and order of dismissal which discusses the evidence in detail. The following summary of the evidence is taken from that opinion.

The victims, Richard Lomax and Nanya Baker, testified that they were robbed by two youths as they left an apartment house in Marin City. At the trial they identified defendant as the one who did all the talking and who held a gun on them while his accomplice (said to be the younger brother of defendant) deprived them of their money. They had about 90 seconds to observe their assailants and shortly after the robbery they furnished a description to a police artist who prepared composite drawings of the robbers. The drawing of the person who had held the gun bore a notation indicating that

the suspect was between 6′ and 6′1″ tall. Defendant is 5′10″ tall. Richard Lomax thought the drawing was a "close" representation of the person involved. Nanya Baker also said that the sketch was intended to depict the gun-wielding robber, but she testified that she had wanted to make some changes on the drawing but was not permitted to do so.

The sketch of the gun-wielding robber was admitted in evidence upon offer of the defense and upon objection of the prosecutor who urged that the drawing did not clearly represent defendant. Although the judge agreed that the sketch did not look like the defendant, he concluded that this was not a valid objection to admission and admitted it. The prosecutor in his argument to the jury stated that he had never seen a composite that looked like the person once he was apprehended and that he did not think anyone else had either. The trial judge, who had once been a prosecuting attorney, stated that in his opinion composites are often admitted in evidence at the request of the prosecution because of their close resemblance to a defendant, citing, for example, *People* v. *Imbler*, 57 Cal.2d 711, 716 [21 Cal.Rptr. 568, 371 P.2d 304].

The court identifications were preceded by pretrial identifications.

About two weeks after the crime, Lomax was called to the county jail to attend a lineup. He was asked to identify the one he thought was the "gunman." He looked through a peephole and observed four persons of different heights and weights standing on the other side of a steel door. He identified defendant.[1] Lomax said he did not observe any particular physical characteristic.

Miss Baker also made a pretrial identification of defendant and his brother. This occurred at a sheriff's substation. There was no lineup. She observed only the two persons. She apparently first identified defendant's brother who was brought into a room alone. Then defendant was brought in, and she identified him. She also said that there was no outstanding physical characteristic noted by her at the time of the robbery that assisted her in making a positive identification.

The defense presented several alibi witnesses. The defendant took the stand and denied commission of the offense. In his direct examination, he was asked if he knew who had

---

[1]Lomax failed to identify defendant on his first try but on two other occasions after the persons had changed positions he correctly identified him. It was unclear whether the first failure was based upon selection of

committed the crime. He answered that he had heard another person say he had committed the crime, and, although defendant at first refused to divulge the person's name, he subsequently identified the person as Jim Huff, a 15-year-old friend of his brother. The prosecutor then directed that Huff, who was outside the courtroom, be brought into the courtroom. Earlier in the trial, Lomax and Miss Baker had been asked on cross-examination whether they recognized any of the four persons who sat in the rear of the courtroom, Huff was one of them, and neither Lomax nor Miss Baker indicated that they had ever seen Huff before.

The defense subsequently called Huff to the stand, but he asserted his privilege against self-incrimination. The prosecutor then pursuant to section 1324 of the Penal Code requested immunity, and Huff then testified that he had committed the crime charged against defendant with defendant's brother. Huff's recollection of the crime was at variance in some unspecified details with that of the victims. Huff is between 6' and 6'1" tall, and according to the trial judge looks as "much like the composite drawing (perhaps more) as does the defendant." The trial judge did not set forth the variances but commented that in light of his age and the circumstances of the robbery Huff could not be expected to remember everything that occurred.[2]

Aside from the identifications, there is no other evidence to connect defendant with the crime. His fingerprints were not found at the scene, and he was not shown to have a gun or any of the stolen property.

The trial judge reasoned that the courtroom identifications were entitled to little weight because as pointed out in *People v. Slobodion*, 31 Cal.2d 555, 559-560 [191 P.2d 1], quoting from 4 Wigmore, Evidence (3d ed.) page 208, a witness' act of pointing out the defendant in the courtroom, after all that has intervened, is " 'of little testimonial force,' " that the identification of Miss Baker in the sheriff's substation could not be given much weight in view of the circumstances in which it occurred, that the weight to be given to Lomax's identification was reduced because in the lineup the persons

another suspect or a simple error in calling out the wrong number. In any event the trial judge assumed that he consistently identified defendant.

[2]The prosecutor subsequently charged Huff with perjury. The judge stated that he was unaware whether the prosecutor had any evidence other than that presented at trial.

were of different size and weight and apparently wore dissimilar clothing, that defendant should have been acquitted because of a reasonable doubt as to his guilt, that a comparison of the evidence at trial with that at the preliminary hearing shows that the prosecution had presented all of its evidence, that the identification testimony would not be admissible at a retrial under *United States* v. *Wade*, 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and that retrial would invite a miscarriage of justice.

The trial judge ordered the information dismissed in the interests of justice on the grounds: "(1) Insufficiency of the evidence to prove the defendant's guilt beyond a reasonable doubt. (2) Denial of defendant's Sixth Amendment right to counsel at a critical stage of the proceeding, thereby making retrial impermissible."

Section 1385 of the Penal Code provides: "The court may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."[3]

---

[3]The requirements of this section were fully complied with. The trial judge set forth at length his "reasons for the dismissal." Apparently the Legislature believed this requirement would sufficiently protect the interests of the public. Therefore, the question we are presented with is not whether the ruling made by the trial court was correct but whether that ruling is subject to review by writ of mandate. We are of the opinion, for reasons later set forth, that mandate is not available for this purpose. It is nevertheless argued by the Attorney General that the holding of the *Wade* case that counsel must be present at a lineup, is prospective and not retroactive, citing *Stovall* v. *Denno*, 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]. That case undoubtedly so holds. But lack of counsel is not the only reason given by the trial court for rejecting the identification testimony. Long before the *Wade* case, it was the rule that pretrial identification testimony must be excluded if the confrontation by the witness is "unnecessarily suggestive" and is conducive to irresponsible mistaken identification so that defendant is "denied due process of law." (*Stovall* v. *Denno*, *supra*, 388 U.S. 293, 301 [18 L.Ed.2d 1199, 1205-1206, 87 S.Ct. 1967]; see also *Palmer* v. *Peyton*, 359 F.2d 199, 201; *People* v. *Caruso*, 68 Cal.2d 183, 184 et seq. [65 Cal.Rptr. 336, 436 P.2d 336]; *People* v. *Harris*, 67 Cal.2d 866, 872 [64 Cal.Rptr. 313, 434 P.2d 609]; *People* v. *Feggans*, 67 Cal.2d 444, 449 [62 Cal.Rptr. 419, 432 P.2d 21].) In the *Palmer* case, cited with approval in *Stovall*, the court said: "Any identification process, of course, involves danger that the percipient may be influenced by prior formed attitudes; indeed we are all too familiar with instances in which supposedly 'irrefutable' identifications were later shown to have been incorrect. Where the witness bases the identification on only part of the suspect's total personality, such as height alone, or eyes alone, or voice alone, prior suggestions will have most fertile soil in which to grow to conviction. This is especially

█ Is mandate permissible to review the determination made under this section? We think not. Generally speaking, the writ of mandate is issued upon the verified petition of the party beneficially interested to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, duty, or station where there is no plain, speedy, and adequate remedy in the ordinary course of law. (Code Civ. Proc., §§ 1085, 1086; *Flora Crane Service, Inc.* v. *Ross,* 61 Cal.2d 199, 203 [37 Cal.Rptr. 425, 390 P.2d 193]; *Cornell* v. *Superior Court,* 52 Cal.2d 99, 103-104 [338 P.2d 447].) Ordinarily the granting of this relief lies in the discretion of the court (see *Flora Crane Service, Inc.* v. *Ross, supra,* 61 Cal.2d 199, 203; 3 Witkin, Cal. Procedure (1954) pp. 2472 et seq.). The question is whether mandate should be available to secure a review when the Legislature has determined there should be no appeal. In such a case the petitioner has not an inadequate right of appeal, but no appeal at all.

█ The Legislature has determined that except under certain limited circumstances the People shall have no right of appeal in criminal cases. (E.g., *People* v. *Valenti,* 49 Cal.2d 199, 205 [316 P.2d 633]; *People* v. *Superior Court,* 137 Cal. App.2d 194, 196 [289 P.2d 813].) An appeal may be taken by the People "1. From an order setting aside the indictment, information, or complaint; 2. From a judgment for the defendant on a demurrer to the indictment, accusation, or information; 3. From an order granting a new trial; 4. From an order arresting judgment; 5. From an order made after judgment, affecting the substantial rights of the people; 6.

---

so when the identifier is presented with no alternative choices; there is then a strong predisposition to overcome doubts and to fasten guilt upon the lone suspect.'' (Footnotes omitted.) (*Palmer* v. *Peyton, supra,* 359 F.2d 199, 201.)

Miss Baker first identified defendant's brother, and then she was immediately confronted by defendant in the company of the police. The very fact that she thought the police had apprehended one of her assailants would suggest to her that the only other person presented to her was her other assailant. Therefore the trial court was probably correct in holding that Miss Baker's identification testimony would be inadmissible on a retrial.

A more difficult question is presented as to the pretrial identification of Lomax, because he picked the defendant out of a lineup. However, his identification testimony is also arguably suspect. The lineup contained persons of differing heights and weights, and probably each person in the lineup was clothed differently. Lomax was asked to identify the one he thought was the "gunman." The procedure was highly suggestive but we do not have to decide whether it was so suggestive as to amount to a denial of due process because we are of the opinion that mandate is not available to review the correctness of this determination.

From an order modifying the verdict or finding by reducing the degree of the offense or the punishment imposed.'' (Pen. Code, § 1238.)[4] An order of dismissal after trial under section 1385 is not made appealable.

The restriction on the People's right to appeal is not merely a procedural limitation allocating appellate review between direct appeals and extraordinary writs but is a substantive limitation on review of trial court determinations in criminal trials. (See *People* v. *Valenti, supra,* 49 Cal.2d 199, 205; *People* v. *Knowles,* 27 Cal.App. 498, 506-507 [155 P. 137] [Supreme Court opinion on denial of hearing]; *People* v. *Morris,* 115 Cal.App.2d 585, 587-588 [252 P.2d 681].) In each of these cases, as well as many others that could be cited, error by the trial court was assumed or found, and the appellate court stated broadly that the superior court is the ultimate tribunal as long as it does not exceed its jurisdiction and that error in the exercise of its jurisdiction may not be ''reviewed'' by any other tribunal. In *Valenti,* for example, the trial judge during trial dismissed the information on the ground that defendant's arrest was unlawful, and this court recognized that an accused who has been subjected to an unlawful arrest, search, or seizure does not by virtue of such illegality gain immunity from punishment for the offense for which he was arrested or which was disclosed by the search. The court went on to hold that since the order was not appealable under accepted rules we would not by fiat announce that it is appealable merely because it is ''egregiously'' erroneous.

It was expressly held prior to the addition of subdivisions 7 and 8 of section 1238 that an order under section 1385 dismissing an information is not appealable.[5] (*People* v. *Valenti,*

---

[4]Subsequent to the dismissal in the instant case subdivisions 7 and 8 were added to section 1238 of the Penal Code. They read: ''7. From an order dismissing a case prior to trial made upon motion of the court pursuant to Section 1385 whenever such order is based upon an order granting defendant's motion to return or suppress property or evidence made at a special hearing as provided in this code. 8. From an order or judgment dismissing or otherwise terminating the action before the defendant has been placed in jeopardy or where the defendant has waived jeopardy. If, pursuant to this subdivision, the people prosecute an appeal to decision, or any review of such decision, it shall be binding upon them and they shall be prohibited from refiling the case which was appealed.'' (Stats. 1967, ch. 1537; Stats. 1968, ch. 532.)

[5]The addition of subdivisions 7 and 8 have, of course, changed this rule in part, but neither of those subdivisions are applicable here because the order of dismissal was not based on a motion to return or suppress property and because defendant has been placed in jeopardy and has not waived it.

*supra,* 49 Cal.2d 199, 207-208; *People* v. *More,* 71 Cal. 546 [12 P. 631].) *Valenti* quoted the following language from *More:* " 'the order in question is, in its nature and character, one from which the people cannot appeal. The power under which the order was made [section 1385] is substantially the same as that held by the attorney-general in England, and by the prosecuting officer in many of the American states, to enter a *nolle prosequi.* The court, for the purposes of the order of dismissal, takes charge of the prosecution, and acts for the people. It holds the power to dismiss, as the attorney-general in England holds the power to enter a *nolle prosequi,* by virtue of the office and the law; and it is exercised upon official responsibility. The court having acted for the people, and under express power granted by them to so act in their criminal prosecutions, there is no appeal on their part for such action.' "

To permit the People to resort to an extraordinary writ to review where there is no right to appeal would be to give the People the very appeal which the Legislature has denied to them. (*People* v. *Superior Court,* 217 Cal.App.2d 517, 520 [31 Cal.Rptr. 710].) In the last cited case, a judge granted a motion to dismiss and discharged the defendant on the ground of once in jeopardy. The appellate court, assuming that the trial judge proceeded upon an erroneous concept of the sufficiency of the facts before him to sustain a plea of once in jeopardy, held that the lower court acted within its jurisdiction in ruling upon the defendant's motion and that, although the People may thereby suffer a wrong without a remedy, the extension of review beyond the limits which the Legislature has deemed appropriate is not warranted where the trial court has not exceeded its jurisdiction.

In *People* v. *Superior Court, supra,* 137 Cal.App.2d 194, the trial court sustained defendant's objection to certain evidence on the ground that it was illegally obtained and then continued the case to permit the People to seek mandate. It was held that, although the ruling of the trial judge may have been erroneous, the trial judge has jurisdiction to decide matters before him incorrectly as well as correctly and that mandate would not lie to review his determination. It was recognized that the People could not appeal to raise the point and that unless mandamus was permitted the People would suffer a wrong without a remedy, but it was concluded that this was an argument to be presented to the Legislature. (137 Cal.App. 2d at p. 196; see also *People* v. *Justice Court,* 185 Cal.App.2d

256, 258-259 [8 Cal.Rptr. 176]; *Gershenhorn* v. *Superior Court*, 227 Cal.App.2d 361, 366-367 [38 Cal.Rptr. 576].)

The use of the term "jurisdiction" with regard to the availability of mandate upon petition of the People in criminal cases is confusing and unfortunate. The four last cited cases used the term "jurisdiction" to indicate that a court acts in excess of jurisdiction only when it acts without jurisdiction in the traditional sense, i.e., where the trial court has acted without jurisdiction of the subject matter or of the person.

Five cases have held, however, that the issuance of mandate at the request of the People to review orders in criminal proceedings is not limited to cases where the trial court has acted in excess of its jurisdiction in the traditional sense. Thus, in *People* v. *Superior Court*, 202 Cal. 165 [259 P. 943], the jury returned a verdict of guilty of first degree murder, and the trial court after hearing a motion for new trial erroneously entered a judgment of guilty of second degree murder. In *People* v. *Superior Court*, 199 Cal.App.2d 303 [18 Cal.Rptr. 557], the trial judge after a plea of guilty to murder in the first degree granted probation assertedly contrary to section 1203 of the Penal Code. In *People* v. *Superior Court*, 202 Cal.App.2d 850 [21 Cal.Rptr. 178], the trial judge after a guilty plea to a charge of petty theft ordered the case dismissed upon hearing the probation report. In *People* v. *Superior Court*, 240 Cal.App.2d 90 [49 Cal.Rptr. 365], the trial judge granted defendants' motion for judgment notwithstanding the verdict. And in *People* v. *Superior Court*, 249 Cal.App.2d 714 [57 Cal.Rptr. 892], the trial judge after reading the transcript of the preliminary examination but before trial granted a motion to dismiss in the interests of justice under section 1385 of the Penal Code. In each of these cases the appellate court issued mandate on the ground that a remedy by appeal was not available.

The five decisions applied, to a limited degree, the definition of jurisdiction established by *Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 291 [109 P.2d 942, 132 A.L.R. 715], where it was held that a court acts in excess of jurisdiction, insofar as that term is used to indicate the availability of prohibition and certiorari, when its acts exceed the defined power of a court in any instance whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis.* (See also 1 Witkin, Cal. Procedure,

*supra,* p. 378.) However, if this test of "excess of jurisdiction" be used it would allow mandate on petition of the People to review any claimed error occurring at any time in a criminal trial. To apply that definition of "jurisdiction" would permit the People in all cases where they cannot appeal to secure the very review denied to them. Appellate review at the request of the People necessarily imposes substantial burdens on an accused, and the extent to which such burdens should be imposed to review claimed errors involves a delicate balancing of the competing considerations of preventing harassment of the accused as against correcting possible errors.

Assuming that in some cases the matter may be of such importance that mandate may be available to the People to review determinations where appeal does not lie, we are satisfied that the proper balancing of these considerations prohibits review by mandate at the request of the People where, as here, there is a danger of further trial or retrial. Such a rule will give meaningful effect to the legislative policy limiting review and the burdens on the defendant. *People* v. *Superior Court, supra,* 202 Cal. 165, and *People* v. *Superior Court, supra,* 240 Cal.App.2d 90, which permitted the issuance of mandate where there was a danger of retrial, are disapproved.

The Attorney General urges that section 1385 of the Penal Code does not confer power upon the court to order a dismissal of an action over the objection of the prosecution. This contention flies in the face of the very language of the section which provides that the court may "either of its own motion or upon the application of the prosecuting attorney," order an action to be dismissed.

The Attorney General next contends that the court had no power to dismiss after a jury verdict of guilty and that to do so constituted an abuse of discretion. In one situation, this court has recognized the power of a trial court to dismiss under section 1385 notwithstanding a jury finding of guilt. Thus it has been recognized that the power to strike or dismiss the proceeding as to a prior conviction is within the power conferred upon the trial court by section 1385 and that the prior may be stricken notwithstanding a prior jury adjudication of guilt. (*People* v. *Burke,* 47 Cal.2d 45, 49-51 [301 P.2d 241]; *People* v. *Benjamin,* 154 Cal.App.2d 164, 173 [315 P.2d 896]; *People* v. *Harris,* 146 Cal.App.2d 142, 147-148 [304 P.2d 178]; see Burke, *Striking Priors,* 33 State Bar J.

556; cf. *People* v. *Sidener,* 58 Cal.2d 645, 648 [25 Cal.Rptr. 697, 375 P.2d 641].)[6] The authorities cited indicate that the discretion of the judge is absolute except where the Legislature has specifically curtailed it.

Secondly, it bears emphasis that the right of a trial judge to dismiss on his own motion is stated in section 1385 in apposition to the judge's right to dismiss on motion of the prosecutor, and it follows that the discretion conferred upon the judge is the same in either situation. Recently, in *People* v. *Polk,* 61 Cal.2d 217, 229 [37 Cal.Rptr. 753, 390 P.2d 641], we recognized the wide discretion of the prosecutor to move for dismissal of one of two charges against a defendant after the defense had commenced and a codefendant had commenced his testimony. In that case, defendant Matthews and his codefendants were charged with conspiracy to kidnap for the purposes of robbery, and one of the two overt acts charged was the robbery of William Fambro. In another count, the defendants were charged with murder of Fambro. The prosecution, aware that jail records showed Matthews was in jail at or near the time of the commission of the crime, informed the court but presented evidence that Matthews was with the other defendants on or about the time of the murder. After a codefendant denied that Matthews was present at the time, the prosecutor moved for a dismissal and the motion was granted. We stated (p. 229): "Although the proof of Matthews' innocence is not conclusive, the evidence is sufficient to raise a reasonable doubt as to his complicity in the murder. It was therefore proper for the district attorney to move for a dismissal."

The broad right to dismiss in the furtherance of justice where the evidence is conflicting was also recognized in *People* v. *Alverson,* 60 Cal.2d 803, 807 [36 Cal.Rptr. 479, 388 P.2d 711], where it was pointed out that after defendants had taken the stand and closing arguments were to commence, a prosecutor who believed one of them to be innocent, could properly move to dismiss under section 1385. (See also *People* v. *Frahm,* 107 Cal.App. 253, 261 [290 P. 678].) Although *Polk* and *Alverson* involved the question of dismissal before the verdict, there is no reason to distinguish them on this

[6]*People* v. *Sidener, supra,* 58 Cal.2d 645, 647-648, disapproved language and implications not necessary to the decision in *People* v. *Valenti, supra,* 49 Cal.2d 199 and *People* v. *Burke, supra,* 47 Cal.2d 45, insofar as they were based on constitutional considerations but in effect reaffirmed the statutory basis.

ground, and dismissal of priors has been permitted after verdict.

In *People* v. *Sidener, supra,* 58 Cal.2d 645, 648-649, we recognized that section 1385 vested in courts the common law power of nolle prosequi and that the common law power permitted an entry of nolle prosequi before the jury was impanelled, while the case was before the jury, or after verdict.

It would seem that, if anything, a court should have broader discretion to dismiss in furtherance of justice after the verdict than it should have during trial. After the verdict, the judge has heard the evidence of the prosecution; whereas prior to the conclusion of the trial there is always the possibility that in the absence of dismissal more evidence may be .received.

There is no reason to distinguish *Polk* and *Alverson* on the ground that there the dismissals were made on the basis of motions of the prosecution rather than the court acting on its own motion. The basic ground involved, further-ance of justice, is the same whether the court acts on motion of the prosecution or its own motion, and in this connection it bears repetition that the cases have held that the trial court in dismissing under section 1385 acts on behalf of the People and upon its official responsibility. A district attorney in moving for a dismissal under the section is treated in effect by *Polk* and *Alverson* as acting upon his own responsibility in seeking dismissal. There is no reason why a trial judge who must state his reasons in the minutes may also not be so treated.[7]

Finally it should be pointed out that, where the Legislature has sought to curtail the discretion of the trial judge to dismiss on his own motion and to permit dismissal only on motion of the prosecutor, it has spoken with unmistakable clarity. Thus the Legislature provided in section 11718 of the Health and Safety Code that the trial judge could not dismiss a prior in a narcotic case admitted or found to be true "except upon motion of the district attorney." (*People* v. *Sidener, supra,* 58 Cal.2d 645, 647.)

In spite of the language of section 1385, it has been held that a trial court's discretion to dismiss on its own motion is more narrowly circumscribed than its discretion to dismiss on motion of the prosecutor. (*People* v. *Superior Court, supra,*

---

[7]If the reasons are not set forth in the minutes, the order dismissing may not be considered a dismissal under section 1385. (*People* v. *Superior Court, supra,* 240 Cal.App.2d 90, 92; see *People* v. *Shaffer,* 182 Cal. App.2d 39, 45 [5 Cal.Rptr. 844].)

249 Cal.App.2d 714, 718.) In that case, the trial judge stated before trial commenced that on the basis of the preliminary transcript he would acquit and asked the prosecuting attorney to reconsider the matter. The next day he asked the prosecuting attorney if he was willing to waive jury and submit the matter, and the prosecutor asked for a trial. The preliminary transcript showed that the defendant had surprised three men ''stripping'' his car and shot one of them. The defendant admitted the shooting to police officers shortly after it occurred. After the request for a trial, the court acted on its own motion in dismissing. The Court of Appeal reasoned that under the evidence it was a question of fact whether the defendant was guilty of involuntary manslaughter in firing a gun without due caution in attempting to frighten the car strippers. Thus, it would seem that the appellate court was holding that a trial judge prior to trial had no discretion to dismiss where the evidence was conflicting.

In holding that the trial judge's discretion to dismiss on his own motion is not as great as his discretion to dismiss on motion of the prosecutor, the court reasoned that a trial judge had other ways of protecting the right of the defendant without depriving the People of a trial of a charge duly presented, for example, by commenting on the evidence to the jury, advising the jury to acquit, or granting a new trial. But this reasoning would mean that a trial judge is permitted to do by indirection what he cannot do by direction and what the Legislature seems to have authorized by the plain language of section 1385.

If a trial judge is convinced that the only purpose to be served by a trial or a retrial is harassment of the defendant, he should be permitted to dismiss notwithstanding the fact that there is sufficient evidence of guilt, however weak, to sustain a conviction on appeal. The trial judge who has heard the evidence as in the instant case is in an excellent position to determine whether a retrial would further the interest of justice. The Legislature has given the trial court the power to dismiss under the broad standard of justice, and in view of the high caliber of our trial judges and their responsibility to the electorate we believe that recognition of such power in cases of conflicting evidence will not result in abuse but to the contrary believe that the due exercise of the power to dismiss in proper cases of conflicting evidence will further justice.

In the instant case the trial judge dismissed the case on the stated ground of insufficiency of evidence to establish

guilt beyond a reasonable doubt. In his long discourse on the evidence he showed that he was conscientiously considering the entire case. He recognized that a jury had reached a different verdict and pointed out that the jury had not been fully apprised of the dangers of identification testimony of which he was aware as a former prosecutor and by reason of his reading on the subject. The trial judge also stated that a comparison of the preliminary transcript and the evidence received at trial indicates that the prosecution has no further evidence. Although this, of course, is not conclusive, the Attorney General has not pointed to any further evidence.

In our opinion, the standard of furtherance of justice will best be served if we recognize discretion in the trial judge, who viewed the witnesses and heard the conflicting testimony, to dismiss on the basis of the reasons he has set forth rather than severely limit such discretion to cases where the evidence is insufficient as a matter of law.

A determination whether to dismiss in the interests of justice after a verdict involves a balancing of many factors, including the weighing of the evidence indicative of guilt or innocence, the nature of the crime involved. the fact that the defendant has or has not been incarcerated in prison awaiting trial and the length of such incarceration, the possible harassment and burdens imposed upon the defendant by a retrial, and the likelihood, if any, that additional evidence will be presented upon a retrial. When the balance falls clearly in favor of the defendant, a trial court not only may but should exercise the powers granted to him by the Legislature and grant a dismissal in the interests of justice.

Assuming we may review the merits in the instant case, we are satisfied that the record does not show an abuse of discretion but that the reasons set forth by the trial judge in his order of dismissal furnish a sufficient basis for the dismissal.

The alternative writ of mandamus is discharged, and the petition for a peremptory writ is denied.

Traynor, C. J., Tobriner, J., and Sullivan, J., concurred.

MOSK, J.—I concur in the judgment.

However, I must point out that no constructive purpose is served by including in the opinion the dictum which results in disapproving *People* v. *Superior Court* (1927) 202 Cal. 165 [259 P. 943], and *People* v. *Superior Court* (1966) 240 Cal.

App.2d 90 [49 Cal.Rptr. 365]. Both of those cases are proper examples of the appropriate use of mandate by the People and should not be disapproved. In the former case the court pronounced an erroneous judgment on the verdict of the jury; in the latter the trial court granted a motion for a judgment notwithstanding the verdict, a proceeding unknown to the criminal law. In neither case did the court order a new trial. We must not overlook the fundamental purpose of our penal statutes: not to give defendant or the People an unconscionable advantage but ''to promote justice'' (Pen. Code, § 4).

Burke, J., concurred.

McCOMB, J.—I dissent. I would issue the writ of mandate in accordance with the views expressed by Mr. Presiding Justice Draper in the opinion prepared by him for the Court of Appeal in *People* v. *Superior Court* (Cal.App.) 64 Cal. Rptr. 572.

Petitioner's application for a rehearing was denied November 27, 1968. McComb, J., was of the opinion that the petition should be granted.