[No. D008949. Fourth Dist., Div. One. Oct. 4, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
MARION BORDEAUX, Defendant and Appellant.

[Opinion certified for partial publication.*]

_____

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

574

## COUNSEL

Roberta K. Thyfault, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Louis R. Hanoian and Laura Whitcomb Halgren, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

WIEN, J.*—This case presents the issue of whether, in a murder case where the jury during deliberations is deadlocked on the greater offense of first degree murder, it is error for the trial court to withdraw the charge of first degree murder and thereby permit the jury to consider and return a verdict of second degree murder. We conclude that such action by the trial court is not error.

Defendant Marion Bordeaux (Bordeaux) appeals from her conviction of second degree murder on grounds that the withdrawal of the first degree murder charge during deliberations with instructions to the jury to deliberate on the charge of second degree (1) violated the rules of *Stone* v. *Superior Court* (1982) 31 Cal.3d 503 [183 Cal.Rptr. 647, 646 P.2d 809] and *People* v. *Kurtzman* (1988) 46 Cal.3d 322 [250 Cal.Rptr. 244, 758 P.2d 572], and (2) coerced the jury into returning a guilty verdict of second degree murder; and on the further ground that (3) self-defense was established as a matter of law. We find Bordeaux's contentions to be without merit and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The charges arose from a shooting incident in the early morning hours of February 14, 1988, following an all-day party at a house in Oceanside, California, occupied by Bordeaux, her female companion Ridel Naylor (Naylor) and Bordeaux's four grandchildren. Around midnight, Bordeaux and Naylor began to argue and make threats against one another. Sometime during the argument, Bordeaux got a loaded gun. Naylor later tried to start a fire in the bathroom and finally at about 3 a.m. Bordeaux shot Naylor in

---

* Assigned by the Chairperson of the Judicial Council.

the head. Shortly thereafter Naylor died from the inflicted wound. Bordeaux testified at trial that she shot Naylor in self-defense.

Bordeaux was charged with the murder of Naylor. (Pen. Code, § 187.) The jury was instructed on first degree murder, second degree murder, voluntary manslaughter and involuntary manslaughter. The court also gave CALJIC No. 8.75 (1982 new) an instruction drafted in response to *Stone* v. *Superior Court, supra*, 31 Cal.3d 503.

The jury began deliberations at 2:30 p.m., Wednesday, July 27, 1988, and continued deliberating until 4:30 p.m. when it was excused until the next day. On July 28, deliberations resumed at 9 a.m. and except for the lunch recess, continued until 4:30 p.m. that afternoon. On Friday, July 29, the jury began deliberating at 9 a.m. At 10:30 a.m., the jury sent the following note to the court: "If we, the jury, take a vote on first degree murder and the vote is not unanimous, do we then move to second degree murder? If so, then do we send you the verdict papers one by one or do we reach a verdict on one charge then notify you?"

Following a discussion and agreement by counsel the court instructed the jurors, in accordance with *Stone*, that before they reach a verdict as to a lesser charge, they must unanimously agree on a verdict as to the greater charge.[2]

---

[2] The following is a colloquy between the court and the jury:

"THE COURT: If you should come to a verdict on any lesser offense than first degree murder, before you return the verdict on the lesser offense, you must have a unanimous verdict on the greater offense, you see. Because once you go down to a lower offense and arrive at a verdict at a lower offense, whatever it might be, that necessarily requires you to have a verdict on the greater offense. And if you come to a verdict, then of course, you're to notify us.

"[JURY FOREMAN]: May I ask a question, your Honor? I believe we need to clear one thing up, and I don't believe I put it in the note quite as clear as I should have. I was trying to do it while everybody was talking. [¶] When we reach a verdict or a charge, be it a lesser charge than the other charges, be it one of the lesser charges, the charges that precede that in this order, okay, do we have to reach a unanimous not guilty verdict?

"THE COURT: If you reach a not guilty verdict on a lesser charge, you, by necessity, would have had to reach a not guilty as to the greater charge. If you arrive at a guilty of a lesser charge, you have to have arrived at a not guilty of the greater charge.

"[JURY FOREMAN]: I think what I'm trying to ask you is, do we have to reach a nonguilty vote unanimously on one of the greater charges?

"THE COURT: If you arrive at a verdict as to a lesser charge, whether it be guilty or not guilty, you are going to have to reach the verdict as to the greater charge which, in that case, would be not guilty.

"[JURY FOREMAN]: Okay, that clears it up. Thank you.

"[DEPUTY DISTRICT ATTORNEY]: I believe the answer is—well, I believe it does have to be unanimous on the greater offense.

"THE COURT: Yes.

The jury then heard the reading of the testimony of Bordeaux and her grandson, John. After the reading of the testimony, the jurors resumed deliberations until their release at 4:30 p.m. when proceedings were adjourned until Monday, August 1.

Deliberations resumed at 9 a.m. on Monday, August 1. Later that day, the court received the following note from the jury: "We the jury have found that we cannot reach a verdict on the [count] of first degree murder. The vote, if you need it, was 11-1. As well, we do not feel that we can move to any lesser charge than first degree murder. We apologize that we were unable to reach a verdict, however, we did the best we felt we could do. Thank you for all your help and understanding." (Emphasis omitted.)

The following discussion then took place between the court and counsel outside the presence of the jury:

"THE COURT: . . . We've had a conference outside of the presence of the jury, and we have a note from the jury which we've reviewed, and I believe we have a stipulation that even though the jury has been unable to arrive at a verdict as to first degree, that they be allowed to consider second degree, even though they do not have a verdict one way or another as to first degree, and if they're unable to arrive at a verdict as to second degree, then a mistrial would be declared, and then the matter would be retried as a first degree.

"[DEPUTY DISTRICT ATTORNEY]: We would so stipulate.

"THE COURT: Is that the agreement, counsel?

"[DEFENSE COUNSEL]: Well, I don't want to stipulate to anything at all, your Honor, at this point.

"THE COURT: All right. The district attorney would agree to that?

"[DEPUTY DISTRICT ATTORNEY]: Yes.

"THE COURT: Is that correct? [¶] All right, then what the district attorney would be doing, if the jury should come in with a second degree, even though they did not unanimously come to a verdict as to first degree, the district attorney would be giving up the People's right of a mistrial and

---

"[DEPUTY DISTRICT ATTORNEY]: It can't be hung up and then just go to the lower; it has to be unanimous. I think the answer is yes.
"THE COURT: Well, that's what I said.
"[DEPUTY DISTRICT ATTORNEY]: Okay."

retrying it as a first degree, so that's really what we're doing, is the district attorney's giving that right up, if there should be a verdict of second degree.

"[DEPUTY DISTRICT ATTORNEY]: Yes."

The jurors resumed deliberations at 1:30 p.m. At 1:53 p.m. they returned to the courtroom and were given the following instruction:

"THE COURT: You presently, as to first degree murder, have a division of votes at 11 to 1; is that correct?

"[JURY FOREMAN]: Yes, sir.

"THE COURT: And your instructions were that if you had such a division, you were to report that division back to the court, which you have done; and the instructions further indicate that you cannot go from first degree to second degree unless you have a unanimous verdict on first degree, either—and in that case, obviously, it would be a unanimous verdict of not guilty before you could go on to second degree, and those are the instructions that I've given you.

"At this time, I'm changing those instructions. You are no longer to consider first degree, and you are now to consider second degree. First degree is no longer before you, all right? With those instructions, I'm going to ask you to return to the jury room and deliberate. Those are the instructions."

Thereafter at 1:56 p.m., the jury returned to the jury room. Twelve minutes later, the jury reached a verdict of second degree murder.

## DISCUSSION

### I

### STONE/KURTZMAN

Bordeaux contends that the trial court's withdrawal of first degree murder from the jury with the instruction to consider second degree violated the rules of *Stone* v. *Superior Court, supra,* 31 Cal.3d 503 and *People* v. *Kurtzman, supra,* 46 Cal.3d 322. We disagree.

In *Stone* v. *Superior Court, supra,* 31 Cal.3d 503, the jury had unanimously agreed that the defendant was not guilty of first degree murder but deadlocked on the lesser included offenses of second degree murder and

manslaughter. The court held that retrial of the murder charge was barred by the principles of double jeopardy but the defendant could be retried for the lesser included offense of manslaughter. For future use, the court directed trial courts to adopt a procedure whereby a partial verdict could be rendered on the greater offense in circumstances where the jury is deadlocked only on a lesser included offense. The procedure directed by the court was to restrict a jury from returning a verdict on a lesser offense before acquitting on a greater offense. This procedure was adopted in CALJIC No. 8.75, given by the court in the instant case. However, the circumstances in this case are quite different from *Stone* because the jury here was not prepared to render a partial verdict on the greater offense but was deadlocked on first degree murder and wanted instructions concerning its duties under those circumstances.

*People* v. *Kurtzman, supra,* 46 Cal.3d 322, addresses the reverse situation to that presented in *Stone, supra,* that is, where the disagreement is limited to the greater offense, a situation more analogous to the present case. The issue presented in *Kurtzman, supra,* was whether the jury was precluded from even considering the lesser offense before acquitting of the greater offense. In clarifying *Stone,* the court held that the jury was not precluded from discussing and considering the greater and lesser offenses in any order the jury chooses and that *Stone* requires only that a *verdict* on the lesser charge not be rendered before acquitting on the greater. The court rejected a *defense argument* that the court return to the rule prior to *Stone,* i.e., no requirement of unanimity on the greater before returning a verdict on the lesser.

If what the court in this case did was to allow the jury to not only *consider* the lesser but allow a verdict to be rendered without an acquittal on first degree murder, there would be a clear violation of *Kurtzman* and *Stone.* However, instead here the court withdrew first degree murder from the jury. The effect of such withdrawal is not discussed in *Kurtzman* nor any of the cases discussed in *Kurtzman* dealing with the acquittal-first rule.

What is the effect of such a withdrawal? The court and the prosecutor apparently concluded that if the jury could not agree on second degree murder, a mistrial could be declared and a retrial could be had on first degree murder and the same lesser included offenses. The court and prosecutor were in error. ▪ Once a jury trial has commenced, the defendant is in jeopardy. Any discharge without the consent of the defendant is unwarranted and the defense of former jeopardy may be asserted. (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses, § 281, p. 323.) As stated in *Stone* v. *Superior Court, supra,* 31 Cal.3d at page 518, discussing *Green* v. *United States* (1959) 355 U.S. 184 [2 L.Ed.2d 199, 78

S.Ct. 221, 61 A.L.R.2d 1119]: "a judge's failure to give the jury the opportunity to return an express verdict of acquittal on the greater offense gives rise to a plea of once in jeopardy as to that offense barring retrial thereon, even though the jury did not render a verdict on the offense. [Citation.]" As the United States Supreme Court stated in *Green, supra,* at page 188 [2 L.Ed.2d at pages 204-205]: "This prevents a prosecutor or judge from subjecting a defendant to a second prosecution by discontinuing the trial when it appears that the jury might not convict."

■ This rationale is clearly applicable in the present case. It appeared that the jury might not convict on first degree and in fact the jury related that to the court. As Bordeaux's counsel points out in appellant's brief, the court failed to make the inquiries which are usually made when it appears a jury is deadlocked. Furthermore, there was no consent by Bordeaux to the withdrawal of the first degree murder charge. Thus the jury was discharged as to the first degree murder charge and jeopardy attached at that point. The removal of first degree murder from the case by the court, with the consent of the prosecutor, constituted a form of dismissal authorized by Penal Code section 1385.[3] The discretion of the judge to dismiss a charge under Penal Code section 1385 in the interests of justice may be exercised, like the common law power of nolle prosequi vested by the statute in the court, at any time during the trial, while the case is before the jury or even after a jury verdict. (*People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491, 503 [72 Cal.Rptr. 330, 446 P.2d 138].)[4]

Since the charge of first degree murder had in effect been dismissed from the case and jeopardy had attached, there was no violation of either *Stone* or *Kurtzman.*

Nor does *People* v. *Avalos* (1984) 37 Cal.3d 216 [207 Cal.Rptr. 549, 689 P.2d 121], relied on by Bordeaux dictate a different result. In *Avalos,* the trial court avoided a deadlock situation by accepting a general verdict finding the defendant guilty of an unspecified degree of murder and then

---

[3] Penal Code section 1385 reads: "(a) The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading.

"(b) This section does not authorize a judge to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667."

[4] The case of *People* v. *Orin* (1975) 13 Cal.3d 937 [120 Cal.Rptr. 65, 533 P.2d 193], referred to in the concurring opinion, invalidating a section 1385 dismissal because of noncompliance with the statutory requirement of a statement of reasons set forth in the minutes, is distinguishable because the dismissal in *Orin* was over the vigorous objection of the People whereas the withdrawal of first degree murder in this case was with the consent of the prosecutor.

fixed the verdict at second degree. Based on *People* v. *Dixon* (1979) 24 Cal.3d 43 [154 Cal.Rptr. 236, 592 P.2d 752], the California Supreme Court held the trial court erred, and concluded that the jury must unanimously agree on the degree of murder.[5] *Avalos* is distinguishable because here the first degree murder charge was dismissed, the jury was not allowed to render an unspecified verdict and in fact fixed the verdict at second degree. The statutory provision for a mistrial (Pen. Code, 1140), referred to in *Avalos*, has no application under the facts of this case where the first degree murder charge is in effect dismissed. This is because any asserted right to a mistrial under Penal Code section 1140 does not impair the right of a trial court to dismiss a charge under Penal Code section 1385.

## II

### COERCION

Bordeaux also contends that the withdrawal of first degree murder with instructions to "now consider second degree" coerced the jury to return a verdict of second degree murder.

Clearly dismissal of first degree murder under the circumstances here benefits both defendant and the criminal justice system. Defendant avoids the risk of conviction on the greater offense while the justice system is afforded the opportunity to avoid a mistrial. Nevertheless, if the verdict on the lesser offense has been coerced, the case must be reversed.

The issue as framed by both counsel is "whether the remarks of the court, viewed in the totality of applicable circumstances, operate to displace the independent judgment of the jury in favor of considerations of compromise and expediency." (*People* v. *Carter* (1968) 68 Cal.2d 810, 817 [69 Cal.Rptr. 297, 442 P.2d 353].)

In *Carter*, the jury had been unable to reach a verdict on the charge of receiving stolen property, and had informed the trial court, at 8:45 p.m., that it stood 11 to 1. The court asked the dissenting juror if he understood certain reread instructions, then said to the jury, "I'm going to send you out again and I'm going to stay here a half hour. I'd hate to lock you up tonight." (*People* v. *Carter, supra,* 68 Cal.2d at p. 814, fn. 1; italics deleted.) The jury retired, and, in 10 minutes, returned a guilty verdict on the stolen property charge. On appeal, the court held that the trial court's statements "were coercive of the jury and require reversal of the judgment . . . [be-

---

[5] In *Avalos* in spite of error, the defendant's conviction was affirmed on the ground of invited error.

cause] their effect was to exert extreme pressure upon the lone dissenting juror to conform his opinion to that of his fellow jurors." (*Id.* at p. 819.)

█ In the case here, unlike in *Carter*, the charge on which the guilty verdict was returned was not the same charge on which the jury had been deadlocked. Accordingly, the "lone dissenting juror" on the deadlocked charge could not have been coerced to "conform his opinion to that of his fellow jurors," because that charge had been withdrawn from the jury's consideration.

It is sheer speculation to assume that the lone dissenting juror was influenced to render a guilty verdict of second degree murder by the actions of the court. It is more plausible that the lone juror, who later was determined to be a holdout on first degree, would have been reinforced in his or her convictions, whatever they may have been, when the court dismissed the very charge to which he or she had dissented. Moreover, there is no indication in the record that the juror who had dissented on the first degree murder charge had also dissented on the second degree murder charge, and the fact that the jury reached its verdict on the second degree charge in 12 minutes indicates to the contrary.

█ Further, if the defendant is contending that the court coerced any or all of the jurors to reach a verdict on second degree murder by instructing them to "consider second degree" and to "return to the jury room and deliberate," these instructions are not coercive. Moreover, when it gave the instructions, the court did not indicate its predilection for a particular verdict (*People* v. *Carter, supra*, 68 Cal.2d at p. 819), did not exert pressure on a dissenting juror (*ibid.*), did not show exasperation (*id.* at p. 820), and did not expressly or impliedly threaten the jury in any way. (*Ibid.*) Accordingly, there is nothing in the record to indicate that any statements of the trial court coerced the jury into returning a verdict of second degree murder.

## III

### SELF-DEFENSE*

. . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 573.

## DISPOSITION

Bordeaux's conviction of second degree murder is affirmed.

Froehlich, J., concurred.

**WIENER, Acting P. J.**—I agree the judgment should be affirmed. I limit my concurrence to the result only for the following reasons.

My initial concern is with the majority's willingness to transmute the trial court's conditional withdrawal of the first degree murder charge from the jury into "a form of dismissal authorized by Penal Code section 1385." (Maj. opn., *ante*, p. 581, fn. omitted.) Whatever label may be given to the court's action, it cannot be properly characterized as a dismissal under section 1385.

Penal Code section section 1385 is based on trial court discretion. Before deciding dismissal is appropriate, the court must carefully evaluate the circumstances weighing the defendant's interests against those of society. (*People* v. *Orin* (1975) 13 Cal.3d 937, 945 [120 Cal.Rptr. 65, 533 P.2d 193].) Clearly that did not happen here where the court contemplated its action would permit the first degree murder charge to be retried if the jury could not reach a verdict on second degree murder. (Maj. opn. *ante*, p. 578.) Moreover, a dismissal under section 1385 is invalid unless the court complies with the statutory mandate of stating reasons for the dismissal in an order entered upon the minutes. (See Maj. opn. *ante*, p. 581, fn. 3.) "It is settled law that this provision is mandatory and not merely directory . . . . [Where] 'the reasons are not set forth in the minutes, the order dismissing may not be considered a dismissal under section 1385 [citations].' " (*People* v. *Orin, supra*, at p. 944, quoting *People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491, 503, fn. 7 [72 Cal.Rptr. 330, 446 P.2d 138].)

The significance of bootstrapping Penal Code section 1385 into this case is the majority then rely on that provision to eliminate a defendant's right to the procedure provided by Penal Code section 1140. Section 1140 states in part that "the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court . . . or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree." The majority's statement that "any asserted right to a mistrial under section 1140 does not impair the right of a trial court to dismiss a charge under section 1385" (maj. opn., *ante*, p. 582), would appear to nullify the former provision authorizing a court to dismiss any charge, including *lesser* included offenses, during jury deliberations. The

notion that the court has the power to simplify the jury's task by dismissing lesser included offenses before the jury reaches a verdict on any offense is rather startling and, at least in my view, contrary to both the People's and defendant's respective rights to a jury verdict free from judicial interference.

The theme emanating from the majority's leap from an inadvertent implied acquittal to a Penal Code section 1385 dismissal is that trials can be expedited when judges dismiss charges that may be delaying jury deliberations. Unfortunately, this desire for efficiency is contrary to the People's right to a jury decision on what offenses, if any, the defendant committed and the defendant's right to a fair trial.

In addition to the foregoing I am also concerned with the majority's conclusion the court's action placed Bordeaux in jeopardy. Whether Bordeaux could have challenged a retrial on first degree murder on the basis of double jeopardy is not before us in light of the jury's verdict finding her guilty of second degree murder.

Whether the jury was discharged is also open to serious question. (Maj. opn., *ante*, p. 581.) Although the jury was told it could render a verdict on second degree murder the jury was not discharged until after reaching that verdict.

Finally, if the majority believes the issue of double jeopardy is essential to its decision the People should have been given the opportunity to brief that issue. (Gov. Code, § 68081.) Supplemental briefing here is required not merely because of a technical statutory requirement but because of what I believe is the scope of the majority's holding. Pursuant to the majority opinion had the jury been unable to decide any lesser included offense the People would have been unable to retry Bordeaux on the first degree murder charge. Although double jeopardy might be a defense in such circumstances arguably Bordeaux or similarly situated defendants are in no worse position than had the greater charge(s) not been removed from the jury's consideration. Because I think the majority decision on double jeopardy will have significant precedential effect, it is unfair to deprive counsel from participating in the process through which that decision is reached.

Having expressed my disagreement with substantial parts of the majority decision let me briefly explain why I concur in the result.

In the unexpurgated version of this opinion the unpublished facts show the question for the jury to decide was whether Bordeaux intentionally killed the victim or did the gun accidentally go off when Bordeaux was defending herself against the victim. The jury was deadlocked 11-1 for convicting Bordeaux of first degree murder when that charge was removed

from its consideration and it was told it could render a verdict on a lesser included offense. There is not the slightest suggestion in this record the hold out juror was voting for acquittal. In these circumstances the court's action was not coercive. I therefore concur in the result.

Appellant's petition for review by the Supreme Court was denied December 13, 1990.