Filed 5/30/23  P. v. Terrell CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DENNIS ROBERT TERRELL,<br><br>    Defendant and Appellant. | C095546<br><br>(Super. Ct. No. 21CR-000846) |

A jury found defendant Dennis Robert Terrell guilty of threatening and assaulting his father.  He now seeks to challenge his conviction for assault as well as his sentence. We shall modify the judgment to stay execution of the sentence on count I pursuant to Penal Code section 654[1] and to award two additional days of credit for presentence custody and affirm the judgment in all other respects.

---

[1]     Undesignated statutory references are to the Penal Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2021, defendant's father, Dennis Frank Terrell (Terrell), found defendant in Terrell's kitchen. Terrell told defendant he had to leave. When defendant refused, Terrell called 911.

In the call, Terrell told the 911 operator that his son was trying to stab him and was threatening him with a knife. Defendant is heard in the background demanding to know what happened to his dad and accusing Terrell of taking defendant's child. Terrell repeatedly asked the operator for help. Defendant threatened, "I'll stick this in your fucking neck if you don't tell me where my father is." Terrell told the operator that he could not leave because "he's got me down on the couch." Defendant told Terrell that he was not his dad and was trying to take over his parents' home. Defendant demanded that Terrell hang up the phone and the call ended. A few minutes later, Terrell called 911 again and reported that he was able to convince defendant to leave.

At trial, Terrell explained the interaction with defendant on that day. He testified that during the call Terrell tried to distance himself from defendant and went into the front room where he ended up on the couch with defendant standing over him. Defendant asked him, "What have you done with my father?" and yelled at Terrell saying, "I am going to jam this into your eye and cut your f'n throat." Terrell said there appeared to be something metallic in defendant's hand, but he was not sure what defendant was holding. Terrell could not recall whether defendant swung or thrust his hand toward Terrell; he was focused on putting distance between himself and defendant. Defendant asked where his son was and Terrell answered that he was at school, which seemed to calm defendant. Defendant kept cursing at Terrell and knocked a pillow out of Terrell's hand. Terrell told defendant he would get his son for him, and defendant left.

Defendant was charged with committing assault with a deadly weapon (count I; § 245, subd. (a)(1)) and criminal threats (count II; § 422, subd. (a)). As to count II, it was further alleged that defendant personally used a deadly weapon, a knife (§ 12022, subd.

2

(b)(1)). Prior to deliberating, the jury was instructed it could consider lesser included offenses of assault and attempted criminal threats for each respective count.

The jury deadlocked as to count I and returned a verdict of guilty on the lesser included offense of assault (§ 240). The jury also found defendant guilty of criminal threats, the original charge, in count II (§ 422, subd. (a)), but was deadlocked as to the special allegation that he used a deadly weapon (§ 12022, subd. (b)(1)). The court granted the prosecution's motion to dismiss the greater charged offense (§ 245, subd. (a)(1)) in count I, accepted and recorded the verdict on the lesser included offense as to count I, dismissed the special allegation as to count II, accepted and recorded the verdict on count II, and then discharged the jury.

On January 3, 2022, the trial court sentenced defendant to the upper term of three years on count II, and a concurrent term of 120 days on count I.

Defendant filed a timely notice of appeal.

## DISCUSSION

### I

### *Verdict*

Defendant asserts that when the trial court told the jury to go back to the deliberation room and fill out the verdict forms as to the charged and lesser included offenses, the court directed a verdict of guilty on assault, the lesser included offense. The People contend that any error was invited when defense counsel accepted the entry of a guilty verdict on the assault charge and forfeited any challenge to that verdict by failing to object at trial. We affirm.

#### A. *Additional Background*

On the second day of deliberations, the jury sent a note indicating it reached a verdict on one count but had a disagreement on others. The court released the jury for lunch and requested it to return at 12:30 p.m. to continue to deliberate.

3

At about 2:30 p.m., the court informed counsel it received a note from the jury indicating it was "at an impasse on a certain count and/or special allegation." The court indicated that, prior to accepting any verdicts, it would ask the jury panel whether it was deadlocked. The parties agreed to that approach. The foreperson subsequently told the court that the jury reached a verdict on a lesser included offense but it was "[t]he higher count above that we can't reach a verdict on." The court stated that in order to reach a full verdict on the lesser included offense, the jury had to first reach a full verdict on the greater offense. The foreperson agreed that was the jury's understanding of the instructions. The foreperson indicated that on one charge the jury was deadlocked on the higher count, which impacted the jury's deliberations on the special allegation on the other count. The court directed the jurors to go back into the jury deliberation room, review the jury instructions, and then complete any verdict forms that they could.

At 3:40 p.m., the court called the parties to discuss the verdict forms submitted by the jury. The trial court had reviewed the verdict forms prior to meeting with the parties. Out of six verdict forms, only one was completed. The court told the parties that it planned to provide the jury another opportunity to deliberate. If the jury said it could not reach a verdict, the court's intention would be to declare the jury deadlocked as to that count and it would refuse to accept the guilty verdict on the lesser included offense because the verdict would not be compliant with the law. Regarding the other count, the court would accept the verdict the jury reached. The People agreed to that approach. Defense counsel agreed it would be best to resolve any deadlock "and then, after that, I believe the Court has full discretion to do as it sees fit."

During a subsequent colloquy with the foreperson, the foreperson confirmed the jury was deadlocked on count I. The foreperson stated that the jury thought it had to find defendant not guilty of the charged offense before it could find defendant guilty of the lesser included offense, and that "we would have found him guilty of the lesser charge." The court told the jury that it may not convict on a lesser included offense until it had

4

acquitted on the greater offense. The court then invited the jury to deliberate further, stating, "If you can't reach a verdict, then I am going to address that. If you can, I am going [to] address that as well; but you cannot convict on a lesser unless you acquit, meaning not guilty, on a greater." The foreperson said, "That's the way we understood the instructions." The court told the foreperson, if "you believe you are hopelessly deadlocked, then, obviously, you don't fill out either form." The jury resumed deliberations.

Later that day, the court informed the parties that the verdicts were returned in the same condition as previously submitted and there was "nothing on the lesser included filled out as to Count 1." The court planned to instruct the jury to fill out the form for the lesser included on count I if it had reached a unanimous verdict. The court stated, "Whether the Court can accept it and whatever happens with it really is not their concern." The parties both agreed to this approach. Addressing the jury, the court said its understanding was that the jury had reached a full verdict on the lesser included as to count I. The foreperson agreed, and the court told the foreperson the jury needed to indicate that on the form. The foreperson said, "Oh, we were told we couldn't." The court told the jury that if it has reached a full verdict on that lesser included or any other count, it has to be done in the deliberation room and indicated on the form. The jury returned to the deliberation room.

Outside the presence of the jury, the trial court advised the attorneys that should the jury return a verdict of guilty on the lesser offense in count I, and not return any verdict as to the greater charge, "I gave you what I believe to be the options under *People v Fields*." Quoting from *Fields*, the trial court continued: "Should this occur, the incomplete verdict of conviction on the lesser included offense initially rendered by the jury is of no effect. [¶] . . . [¶] And the prosecutor may move the trial court to declare a mistrial, discharge the jury, et cetera, and set the entire matter for retrial . . . . [¶] Alternatively, when faced with a deadlock on the greater offense and a verdict of guilt on

5

the lesser included, which is what I anticipate is going to happen when they come back, the People may prefer to forgo the opportunity to convict the accused of the greater offense on retrial in favor of obtaining a present conviction on the lesser. In that this case, the People should move the trial court to exercise its discretion to dismiss the charge on the greater in furtherance of the justice under 1385." (See *People v. Fields* (1996) 13 Cal.4th 289, 311 (*Fields*).) In response, the prosecutor said it appeared that the jury was unable to render a verdict as to the principal charge in count I and requested the court declare a mistrial. Defense counsel said if the jury remained deadlocked on count I, he would request the jury be polled.

When the jury returned, the court noted that the verdict form as to count I was not completed, nor was the lesser included offense with respect to count II, and there was no verdict form for the special allegation linked to count II. The jury, however, had completed some of the verdict forms, including for the lesser offense to count I. When the trial court asked for clarification, the foreperson confirmed that the jury was deadlocked on the principal charge in count I, the lesser included offense in count II, and the special allegation associated with count II. The foreperson also confirmed the jury reached verdicts as to a lesser included offense on count I and on the charged offense in count II. The foreperson explained the jury thought it had to reach a verdict on count I before it could consider the special allegation in count II.

The court then polled the jury. Each panel member said there was nothing that could be done to enable the jury to reach a unanimous verdict as to count I or the special allegation on count II. The parties agreed that the jury was hopelessly deadlocked as to count I and as to the special allegation in count II. The court read the verdicts of guilty of assault as a lesser included offense of the charged assault with a deadly weapon in count I and guilty of criminal threats. The jury was polled.

The prosecutor requested the court dismiss count I in the interest of justice pursuant to section 1385. Defense counsel had no objection. The court asked whether

6

each party "waive[d] any defect therein," and each party agreed. The court granted the People's request to dismiss the charge of violating section 245 and directed the clerk to record a guilty verdict as to section 240 as a lesser included offense with respect to count I. The court also ordered the clerk to enter the guilty verdict as to count II and dismissed the special allegation attached to count II.

### B. Analysis

In *Stone v. Superior Court* (1982) 31 Cal.3d 503, 519 (*Stone*),[2] the Supreme Court held that "when a trial judge has instructed a jury on a charged offense and on an uncharged lesser included offense, one appropriate course of action would be to provide the jury with forms for a verdict of guilty or not guilty as to each offense."

"Under the acquittal-first rule, a trial court may direct the order in which jury verdicts are returned by requiring an express acquittal on the charged crime before a verdict may be returned on a lesser included offense." (*People v. Bacon* (2010) 50 Cal.4th 1082, 1110.) Although the jury must record its findings on the verdict forms in this order, it may consider and discuss lesser offenses at any time during deliberations. (*Fields, supra*, 13 Cal.4th at p. 309, citing *People v. Kurtzman* (1988) 46 Cal.3d 322, 333 (*Kurtzman*); see also *Stone, supra*, 31 Cal.3d at p. 519; CALCRIM No. 3517.) Our Supreme Court has encouraged trial courts to give this "so-called *Kurtzman*" instruction at the outset of jury deliberations but has held it *must* do so when jurors express their inability to agree on a greater inclusive offense. (*Fields*, at pp. 309-310.) "[T]he trial court commits error if it receives and records a verdict of guilty on the lesser included offense without ever having given the jury an acquittal-first instruction." (*Id.* at p. 310.)

When deliberations appear to be at an impasse, the court may ask the jury if it is unable to reach a verdict. "When . . . the jurors express their inability to agree on a

---

[2]    Abrogated in part in *People v. Aranda* (2019) 6 Cal.5th 1077, 1086.

greater inclusive offense, while indicating they have reached a verdict on a lesser included offense, the trial court must caution the jury at that time that it 'may not return a verdict on the lesser offense unless it has agreed . . . that defendant is not guilty of the greater crime charged.' " (*Fields, supra*, 13 Cal.4th at pp. 309-310, quoting *Kurtzman, supra*, 46 Cal.3d at p. 329.) As the trial court in this case noted, should the jury still decline to return the requisite verdict of acquittal of the greater offense, "the incomplete verdict of conviction on the lesser included offense initially rendered by the jury is of no effect, and the prosecutor may move the trial court to declare a mistrial, discharge the jury, and set the entire matter for retrial. (§§ 1140, 1141; *People v. Avalos* (1984) 37 Cal.3d 216, 228.) Alternatively, when faced with a deadlock on the greater offense and a verdict of guilt on the lesser included offense, the People may prefer to forgo the opportunity to convict the accused of the greater offense on retrial in favor of obtaining a present conviction on the lesser included offense. ([*People v. *]*Zapata* (1992) 9 Cal.App.4th 527, 534.)[3] In that case, the People should move the trial court to exercise its discretion to dismiss the charge on the greater offense in furtherance of justice under section 1385. (See *People v. Bordeaux* (1990) 224 Cal.App.3d 573, 581-582 [right to mistrial under section 1140 does not impair trial court's authority to dismiss charge pursuant to section 1385].)" (*Fields, supra*, 13 Cal.4th at p. 311.)

De novo review is applicable in assessing whether instructions correctly state the law and whether instructions effectively direct a finding adverse to a defendant by removing an issue from the jury's consideration. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

Defendant argues the trial court violated the rule established in *Stone*, *Kurtzman*, and *Fields* when, with respect to count I, it directed the jury to return a verdict on the

---

**3**    Disapproved on other grounds in *Fields, supra*, 13 Cal.4th at p. 305.)

lesser included offense and then accepted the verdict on the lesser without receiving a verdict on the greater charge. *Stone*, *Kurtzman*, and *Fields* may be "read to authorize an instruction that the jury may not *return a verdict* on the lesser offense unless it has agreed . . . that the defendant is not guilty of the greater crime charged, but it should not be interpreted to prohibit a jury from *considering* or *discussing* the lesser offenses before returning a verdict on the greater offense." (*Fields, supra*, 13 Cal.4th at p. 304, quoting *Kurtzman, supra*, 46 Cal.3d at p. 329 & citing *Stone, supra*, 31 Cal.3d 503.) In this case, the trial court initially instructed the jury under *Stone*, *Kurtzman*, and *Fields*. In addition, when it was clear the jury was deadlocked on the greater offense but had reached an agreement on the lesser included offense, the court directed the jury to reconsider its decision in light of section 1161, *Kurtzman*, and *Fields*. (See § 1161; *Fields, supra*, 13 Cal.4th at pp. 310-311.) However, the court went beyond *Kurtzman* and *Fields*, and directed the jury to return a written verdict on the lesser included offense, which it ultimately did. This was error. Yet as defendant specifically agreed to the trial court's action in directing the jury to complete the verdict form, defendant has waived any challenge to the court's erroneous directive.

Here, the trial court instructed the jury on the acquittal-first rule at the outset and again when the jury declared an impasse as to the greater charge in count I. The court informed the jury, in part, that "[i]f all of you cannot agree whether the People have proved that the defendant is guilty of the greater crime, inform me only that you cannot reach an agreement and do not complete or sign any verdict form for that count." (CALCRIM No. 3517.) In accordance with that instruction, the jury informed the court of the impasse and repeatedly returned a blank verdict form as to count I. When questioned about the blank forms, the foreperson said that the jury "would have found him guilty of the lesser charge" of assault as to count I but understood that it could not do so unless it unanimously found defendant not guilty of the greater offense of assault with a deadly weapon, and the jury was deadlocked on that issue. Even after the court directed

9

the jury to reconsider its agreement on the lesser included offense in light of the acquittal-first rule, it was clear the jury could not agree on acquitting defendant of the charge of assault with a deadly weapon but agreed defendant was guilty of committing the lesser crime of assault. In light of this, the jury correctly understood it should not complete the verdict form as to count I.

However, the trial court was apparently under the impression that the jury was required to indicate their agreement on the lesser included offense on the verdict form while in the deliberation room. This is incorrect. The court's insistence that the jury fill out the verdict form deviated from the statutory procedures that trial courts must follow in receiving a jury verdict. "Once a case has been given over to the jury's consideration, courts have been repeatedly cautioned to refrain from inquiry or conduct that might invade the jury's province or improperly influence their deliberations." (*People v. Aranda, supra*, 6 Cal.5th at p. 1095.) "[W]hen a foreperson or any juror alerts the court that the panel has unanimously resolved a count, the court must act, but with care . . . ." (*Ibid.*; see also §§ 1147, 1149, 1161, 1163, 1164, subd. (a).) The statutory provisions that formalize the receipt of a verdict, affirmation by the entire panel, and polling before the verdict is recorded are intended to reduce the likelihood of a trial court unduly, even if inadvertently, influencing the jury to reach a particular outcome. (*People v. Carbajal* (2013) 56 Cal.4th 521, 531.) Nevertheless, when defense counsel specifically agreed to the trial court's insistence that the jury indicate its agreement on the lesser offense in writing, defendant waived any challenge to this approach. (See *People v. Valdez* (1995) 33 Cal.App.4th 1633, 1638-1639 [acquiescence without objection in trial court's procedural error waives the defect].)

Even if not waived, this error did not constitute a directed or coerced verdict, as defendant claims. In open court, the jurors announced they were deadlocked on the greater offense in count I and submitted their verdict on the lesser included offense in count I, both of which were confirmed through jury polling. However, the trial court did

10

not order the verdicts recorded. Because the true verdict was the oral declaration and not the act of submitting the verdict forms, the jury's act of filling out the form, albeit at the court's insistence, essentially constituted a tentative verdict consistent with previous indications of the agreement until the true verdict could be rendered in open court. (Cf. *People v. Lankford* (1976) 55 Cal.App.3d 203, 211, dictum on another point disapproved in *People v. Collins* (1976) 17 Cal.3d 687; see also *People v. Green* (1995) 31 Cal.App.4th 1001, 1009 [the submission of the written verdict forms does not constitute the return of the verdict].) Upon receiving the jury's verdict and orally pronouncing it, there were two options under *Fields*: The trial court could declare a mistrial or grant the prosecutor's request to dismiss the charge on the greater offense under section 1385. (*Fields, supra*, 13 Cal.4th at p. 311.) Here, the prosecutor requested the court exercise its discretion and dismiss count I in the interest of justice and enter the verdict of guilty on the lesser included offense of assault. Defense counsel had no objection, and the trial court granted the request and only then ordered the clerk to record the verdict on the assault.[4] This record demonstrates the trial court employed one of the remedies suggested by the *Fields* court: allowing the prosecutor to forgo the opportunity to convict the accused of the greater offense on retrial in favor of obtaining a present conviction on the lesser included offense by seeking dismissal of the charge on the greater offense under section 1385. (*Fields*, at p. 311.) Again, we note that defense counsel was asked, and specifically indicated, he had no objection to dismissal of the greater offense and recording of the verdict on the lesser offense. Pursuant to section

---

**4**     "Generally, a verdict is complete under section 1164 if it has been read and received by the clerk, acknowledged by the jury, and recorded. (*People v. Hendricks* [(1987)] 43 Cal.3d [584,] 597.)" (*People v. Bento* (1998) 65 Cal.App.4th 179, 188.) Up to that point, whether it is on a written form or not, a jury's verdict is not unassailable. (See *id*. at pp. 189-191 [holding that a juror's ability to declare that he dissents from the verdict such that the jury must be sent out for deliberations expires when the verdict is complete].)

11

1385, subdivision (a), the trial court was authorized to dismiss the assault with a deadly weapon charge, thus permitting the jury to render a verdict on the lesser included offense of assault, when the jury indicated during its deliberations that it was deadlocked on the greater charge. (Cf. *People v. Bordeaux, supra*, 224 Cal.App.3d at p. 581 ["The removal of first degree murder from the case by the court, with the consent of the prosecutor, constitute[s] a form of dismissal authorized by . . . section 1385. The discretion of the judge to dismiss a charge under . . . section 1385 in the interests of justice may be exercised, . . . at any time during the trial, while the case is before the jury or even after a jury verdict" (fn. omitted)].)

Defendant's claim that the dismissal effectively led to a directed verdict of guilty on the assault offense lacks merit. Although the trial court was aware of the jury's decision on the lesser offense to count I, none of the trial court's actions indicated its preference for a particular verdict, nor did the trial court exert pressure on any dissenting jurors, show exasperation, or expressly or impliedly threaten the jury. (See *People v. Bordeaux, supra*, 224 Cal.App.3d at p. 583; cf. *People v. Carter* (1968) 68 Cal.2d 810, 819-820.) The jury repeatedly told the court that it had reached a decision on the lesser included charge; the problem lay in the inability to record the decision since the jury was deadlocked as to whether defendant was not guilty of the greater charge. By removing the greater offense from consideration, the court did not direct a verdict. Rather, the jury was free to render the verdict it consistently signaled it wished to return. Thus, the record shows the jury's verdict on the lesser charge was independent of the trial court's instructions.

*People v. Bordeaux, supra*, 224 Cal.App.3d 573 is instructive. In that case, the jury informed the court it was deadlocked as to the charge of first degree murder and felt it could not move on to resolve the issue of second degree murder. During a conference, the parties discussed the possibility of declaring a mistrial. Instead, the court granted the People's motion to dismiss the first degree murder charge under section 1385. When the

12

jury confirmed it was deadlocked on first degree murder, the trial court told the jury the first degree murder charge was removed from consideration and the jury was to consider second degree murder. After deliberating for 12 minutes, the jury returned a verdict of guilty on second degree murder. (*Bordeaux*, at pp. 578-579.)

On appeal, the appellate court rejected the defendant's claim that the dismissal violated his right to a mistrial under section 1140. The court stated, "The statutory provision for a mistrial ([§ ]1140) . . . has no application under the facts of this case where the first degree murder charge is in effect dismissed. This is because any asserted right to a mistrial under . . . section 1140 does not impair the right of a trial court to dismiss a charge under . . . section 1385." (*People v. Bordeaux, supra*, 224 Cal.App.3d at p. 582.) The court also rejected the defendant's claim that dismissal of a first degree murder charge under section 1385, with instructions to consider second degree murder, coerced the jury to return a verdict of second degree murder. (*Bordeaux*, at p. 582.) The appellate court held that the dismissal was not coercive and noted that "dismissal of first degree murder under the circumstances here benefits both defendant and the criminal justice system." (*Ibid*.) The court went on to hold that "since the charge of first degree murder had in effect been dismissed from the case and jeopardy had attached, there was no violation of either *Stone* or *Kurtzman*." (*Id*. at p. 581.)

Similarly, since the felony charge was dismissed before the trial court recorded the verdict on the lesser, there was no violation of *Stone* or *Kurtzman*, no violation of defendant's right to a mistrial, and dismissal of the assault with a deadly weapon charge aided defendant by relieving him of the possibility of another felony conviction, indeed a felony conviction that qualified under the three strikes law, and instead awarded defendant a misdemeanor conviction. Defense counsel expressly agreed to this outcome and defendant has waived any right to claim aggrievement now. (See § 1159; *People v. Solis* (2015) 232 Cal.App.4th 1108, 1120 [a defendant may expressly or impliedly consent to be convicted of a lesser included or lesser related offense].)

13

In light of our conclusion, we need not address defendant's remaining arguments regarding double jeopardy.

## II

### *Sentencing*

Defendant raises several challenges to his sentence. He contends that the trial court erred in imposing the upper term sentence on count II in light of new legislative changes to the sentencing scheme under section 1170. He also claims his sentence for count II should be stayed pursuant to section 654 because the two offenses were committed with the same criminal objective. Finally, he claims that fines and fees were erroneously included on the abstract of judgment when the trial court did not orally impose them. He maintains he is entitled to a new sentencing hearing.

In anticipation of the sentencing hearing, the probation department filed an eight-page report, with an additional worksheet listing the recommended financial obligations. The report reflected an opinion that the "crimes and their objectives were not independent of each other" as well as a recommendation that the trial court impose a prison sentence in light of defendant's current serious felony conviction for section 422. (See §§ 1170, subd. (h)(3), 1192.7, subd. (c)(38).)

At sentencing, which took place on January 3, 2022, the trial court imposed a prison term of three years for the criminal threats conviction (count II) and a concurrent term of 120 days for the assault conviction (count I). In justifying the imposition of the upper term on count II, the court made the following findings: "The defendant has three prior felonies. [Defense counsel], you did indicate correctly -- and that includes one misdemeanor -- that they are rather dated, but his prior supervision was revoked and he ended up serving three years, eight months in state prison between two of those cases." The court also stated that "defendant takes absolutely no responsibility for his actions, at

14

least as what he told probation. There is no level of remorse, let alone any kind of responsibility and that does not bode well."

### A. *Section 1170*

Defendant contends we must remand the matter for resentencing in light of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567), which limits the circumstances under which a trial court may impose the upper term. (§ 1170, subd. (b).) The People disagree, arguing that any error was harmless.

Senate Bill 567, effective January 1, 2022, changed the requirements for using aggravating circumstances and altered sentencing discretion under section 1170. (Stats. 2021, ch. 731.) Among other things, Senate Bill 567 amended section 1170 to prohibit upper term sentencing unless factors in aggravation are stipulated to by the defendant, proven to a fact finder beyond a reasonable doubt, or established by a certified record of conviction. (§ 1170, subd. (b)(2), (3).)

Defendant argues that remand for resentencing is required because a probation report does not meet the statutory requirements of a certified record of conviction under section 1170, subdivision (b)(3), and there was no stipulation or a jury finding that any aggravating factors were true beyond a reasonable doubt.

Here, defendant was sentenced after Senate Bill 567's effective date. (Stats. 2021, ch. 731, eff. Jan. 1, 2022.) Both counsel and the court are presumed to know applicable law. (See *People v. Thomas* (2011) 52 Cal.4th 336, 361 ["In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law' "]; *People v. Barrett* (2012) 54 Cal.4th 1081, 1105 [counsel is "presumed competent and informed as to applicable constitutional and statutory law"].) Defendant could have, but did not, object during the sentencing hearing that the probation report was insufficient

15

to establish his prior convictions.[5]  Because this legislation was in effect at the time of defendant's sentencing hearing, by failing to raise the applicability of Senate Bill 567's ameliorative provisions he has forfeited the argument on appeal.  (*People v. Scott* (1994) 9 Cal.4th 331, 351; *People v. Flowers* (2022) 81 Cal.App.5th 680, 683-684 [the appellant forfeited argument that the trial court erred in imposing the upper term pursuant to § 1170 as it existed at the time he was sentenced because he failed to object to the upper term sentence when it was imposed], review granted Oct. 12, 2002, S276237; *People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218 [" '[c]laims of error relating to sentences "which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner" are waived on appeal if not first raised in the trial court' " (italics omitted)].)

*B.  Section 654*

"[S]ection 654 proscribes double punishment for multiple violations of the Penal Code based on the 'same act or omission.' "  (*People v. Siko* (1988) 45 Cal.3d 820, 822.) Effective January 1, 2022, section 654, subdivision (a) provides in pertinent part that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)

"The question of whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination."  (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.)  Where the trial court makes no express findings regarding section 654, we consider whether substantial evidence supports an implied finding of separate transactions.  (See *People v. Islas* (2012) 210 Cal.App.4th 116, 129; *DeVaughn*, at p. 1113.)  "We uphold the trial

---

[5]  Defendant does not assert counsel was ineffective for failing to object.  To the extent any evidence exists outside the record that counsel was unaware of the new legislation, that may be a challenge appropriate for a petition for writ of habeas corpus.

court's ruling when substantial evidence supports it. [Citation.] This standard of review is exceedingly deferential. [Citation.]" (*People v. Venegas* (2020) 44 Cal.App.5th 32, 38.)

"Whether a defendant may be subjected to multiple punishment[s] under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)

Here, the trial court imposed concurrent sentences on defendant for criminal threats and assault with little explanation. Accordingly, we presume the trial court found defendant had independent objectives for committing the criminal threats in contrast to the assault. (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1468.) But this determination is not supported by substantial evidence.

The parties assert defendant committed the offenses as part of a single course of conduct but disagree whether they were committed with a single objective. Defendant contends the trial court should have stayed execution of the sentence imposed on his conviction for making criminal threats pursuant to section 654 because he "acted with one objective during the commission of the act resulting in the criminal threats charge and the assault charge, that is, to find his family." The People argue defendant had separate objectives when, in making criminal threats, defendant intended to frighten his father but, in committing the assault, he intended to physically injure his father. We conclude the execution of defendant's sentence on one of the counts must be stayed under section 654 because defendant made the criminal threat while he assaulted his father, for

17

the single purpose of frightening his father into revealing the whereabouts of his family. Because we also conclude that the trial court clearly intended defendant to serve a sentence of three years when it imposed a term of three years on count II and ordered the 120-day sentence on count I to run concurrently, we will modify the judgment to stay the term of 120 days imposed on count I.

First, we conclude the assaultive conduct was based on the same acts as the criminal threats. Defendant followed Terrell to another room and stood over Terrell, who was on the couch. Defendant asked where his father was and threatened to stick a metal object in Terrell's neck if Terrell did not tell defendant the location of his father. Terrell saw the metal object in defendant's hand but could not identify it. Terrell also did not say that defendant swung or thrust his hand at Terrell. This single threat, carried out while standing over Terrell with a metal object in his hand, constituted a criminal threat under section 422 as well as the assault under section 240. (See *In re David L.* (1991) 234 Cal.App.3d 1655, 1659 [§ 422 contemplates a threat so " 'unequivocal, unconditional, immediate, and specific' " that it conveys to the victim an " 'immediate prospect of execution' "]; § 240 ["An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another"].) As such, one of defendant's sentences must be stayed under section 654. (See *People v. Corpening, supra*, 2 Cal.5th at p. 316 ["Where the same physical act accomplishes the actus reus requirement for more than one crime, that single act cannot give rise to multiple punishment"].)

Moreover, defendant had a single objective during the offenses: to find members of his family. In this regard, *People v. Britt* (2004) 32 Cal.4th 944 is instructive. In *Britt*, the court ruled that section 654 precluded multiple punishment for a sex offender's failures to notify authorities in a county the defendant moved to, as well as the authorities in the county the defendant moved from, each of which constituted separate sex-offender registration crimes. (*Britt*, at pp. 949, 951-954.) The court disagreed with the decision

18

on review, which concluded that defendant "had two separate objectives: '(1) to mislead law enforcement and the residents of one community to believe that the sex offender remains there; and (2) to conceal from law enforcement and the residents of another community the fact that the sex offender is now residing in that community.' " (*Id*. at p. 953.) The court explained, "Here the objective—avoiding police surveillance—was achieved just once, but only by the combination of both reporting violations." (*Ibid*.) "[F]inding separate objectives here—to mislead or conceal information from the law enforcement agency in each county—parses the objectives too finely." (*Ibid*.) Here, defendant's single objective was to frighten his father into explaining the whereabouts of family members. Although the People attempt to characterize defendant's objective as an intent to emotionally harm Terrell separate from his intent to physically harm Terrell, in light of *Britt*, this requires too fine a parsing. Defendant made one threat of physical harm, contingent upon Terrell's failure to provide the whereabouts of defendant's family.

Because the trial court's implicit determination that defendant had separate and independent objectives for committing the assault and criminal threat offenses is not supported by substantial evidence, defendant may be punished only for one of the offenses. Defendant argues one of his sentences must be stayed but does not provide any analysis or reason for choosing which sentence to stay.

Here, in imposing sentence, the court referenced defendant's prior convictions, noting that he had three prior felonies and while they were "rather dated," he previously had his supervision revoked and defendant "ended up serving three years, eight months in state prison between two of those cases." The court also stated that "defendant takes absolutely no responsibility for his actions, at least as what he told probation. There is no level of remorse, let alone any kind of responsibility and that does not bode well." From these comments, it is clear the trial court intended defendant to serve a sentence of three years when it imposed a term of three years on count II and ordered the 120-day sentence on count I to run concurrently. We may refuse to remand a case for resentencing if the

19

record shows that to do so would be futile. (See *People v. Lopez* (2019) 42 Cal.App.5th 337, 342.) Accordingly, rather than remand, we will modify the judgment to stay the term of 120 days imposed on count I.

### C. Fines and Fees

Defendant argues the court erred when it failed to hold a hearing on his ability to pay fines and fees and failed to include fines and fees in its oral pronouncement of judgment but included them on the abstract of judgment. He requests that we either strike the fines and fees or remand the matter back to the trial court for a hearing on his ability to pay them. We disagree.

The probation report reflected a recommendation that the trial court impose: a court operations assessment pursuant to section 1465.8 in the amount of $80; a conviction assessment of $60 pursuant to section 70373 of the Government Code; and a restitution fine in the amount of $600 pursuant to section 1202.4, subdivision (b), with an identical amount imposed but stayed upon the successful completion of parole pursuant to section 1202.45. After imposing the sentence, the court asked the parties whether they "waive[d] formal reading of the remaining terms and conditions?" Counsel for each party answered in the affirmative. The court stated, "And those will be adopted in their entirety as if read into the record and incorporated into the judgement and sentence."[6] The trial court did not otherwise specifically refer to any fines or fees. The abstract of judgment lists defendant's financial obligations as $600 pursuant to sections 1202.4, subdivision (b) and 1202.45, $80 pursuant to section 1465.8, and $60 pursuant to Government Code section 70373.

---

[6] The minute order from this day reflects "The Court read and considered probation officers report & recommendation [¶] . . . [¶] The Court adopts the terms and conditions listed [in] pages 1-8 [in their] entirety. As if read into the record in their entirety and incorporated into the judgment and sentence."

Contrary to defendant's contention, the record reflects that the trial court imposed the fines and fees by incorporating the recommendations in the probation report into its ruling with no objection from the parties. This method promotes the imposition of correct sentences by allowing the parties the opportunity to see the exact items ordered at sentencing and to raise timely objections to correct errors at the time the fines and fees are imposed. In *People v. Hamed* (2013) 221 Cal.App.4th 928, the appellate court stated: "[I]n cases where the amounts and statutory bases for the penalty assessments have been set forth in a probation report, a sentencing memorandum, or some other writing, the court could state the amount and statutory basis for the base fine and make a shorthand reference in its oral pronouncement to 'penalty assessments as set forth in the' probation report, memorandum, or writing as authorized in *Sharret* and *Voit*. (See [*People v.*] *Sharret* [(2011)] 191 Cal.App.4th [859,] 864; [*People v.*] *Voit* [(2011)] 200 Cal.App.4th [1353,] 1373.) By itemizing and listing the component parts of base fines and penalty assessments prior to sentencing, the parties would have an opportunity to identify and correct errors in the trial court, avoiding unnecessary appeals." (*Id.* at pp. 939-940.)

Citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157, decided several years before defendant's sentencing hearing, defendant additionally argues that the trial court violated his right to due process by imposing these financial obligations without first finding he had the ability to pay them. Defendant also asserts that the restitution fine is excessive under the Eighth Amendment.

Defendant failed to raise an objection before the trial court, on imposition of the fines and fees without a determination of his ability to pay. The absence of a timely objection on ability to pay grounds forfeits defendant's challenges to the restitution fine and assessments on that basis. (See, e.g., *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1154; *People v. Greeley* (2021) 70 Cal.App.5th 609, 624.) Defendant's Eighth Amendment and equal protection claims are similarly forfeited based on his failure to raise them below. (See, e.g., *People v. McCullough* (2013) 56 Cal.4th 589,

21

592-593 [constitutional challenge to booking fee forfeited]; *People v. Torres* (2019) 39 Cal.App.5th 849, 860 & fn. 4 [excessive fines claim forfeited in absence of timely objection].) As *McCullough* makes clear, forfeiture principles apply to constitutional claims. (*McCullough*, at p. 593; see also *In re Sheena K.* (2007) 40 Cal.4th 875, 880-881 [" ' "[n]o procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it" ' "].)

### D. Custody Credits

The court awarded 240 actual days of credit toward his sentence and an additional 240 days of credit for good conduct under section 4019, for a total of 480 days of credit toward defendant's sentence. Defendant contends, and the People agree, that he is entitled to an extra day of credit in each category for a total of 482 days. We agree and will modify the judgment to reflect total presentence custody credits in the amount of 482 days (241 actual and 241 conduct credits).

# DISPOSITION

We modify the judgment to stay the execution of sentence imposed on count I, pursuant to section 654, and to award an extra day of both actual and conduct presentence credit for time spent in custody. In all other respects, the judgment is affirmed as modified. We direct the clerk of court to amend the abstract of judgment to reflect the stay of execution of sentence on count I, pursuant to section 654, and the award of 241 days of actual credit with 241 days of conduct credits pursuant to section 4019 and to forward the amended abstract of judgment to the parties, including the California Department of Corrections and Rehabilitation.


                                                      /s/
                                                 EARL, J.


We concur:


       /s/
HULL, Acting P. J.


       /s/
DUARTE, J.